No. 25-14202

# In the United States Court of Appeals for the Eleventh Circuit

---

RESTORE ROBOTICS REPAIRS LLC,
PLAINTIFF-APPELLANT

*v.*

INTUITIVE SURGICAL, INC.,
DEFENDANT-APPELLEE

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA (CIV. NO. 24-444) (THE HONORABLE M. CASEY RODGERS, J.)*

---

**BRIEF OF APPELLEE**

---

WILLIAM B. MICHAEL
JOSH STALLINGS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

JAMES DURLING
KRISTA A. STAPLEFORD
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*

KANNON K. SHANMUGAM
MASHA G. HANSFORD
JAKE L. KRAMER
DAVIS POLK & WARDWELL LLP
  *1050 17th Street, N.W.*
  *Washington, DC 20036*
  *(202) 962-7000*
  *kshanmugam@davispolk.com*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument is unnecessary because this appeal involves the straightforward application of established principles of the statute of limitations for antitrust claims.

# TABLE OF CONTENTS

Page

Introduction................................................................................................1

Statement of the issues .............................................................................4

Statement of the case ...............................................................................5

Standard of review...................................................................................13

Summary of argument .............................................................................13

Argument..................................................................................................18

I.    The district court correctly held that the continuing-violation
      doctrine does not apply ..................................................................19

      A.    The district court correctly held that Restore failed to
            plead any new act causing new harm.............................20

      B.    Restore's arguments to the contrary lack merit ...........27

II.   The district court correctly determined that the speculative-
      damages exception does not apply ........................................36

      A.    Restore's own allegations establish that it suffered non-
            speculative injury starting in 2019.................................37

      B.    Restore's contrary arguments are unavailing .............39

III.  The district court correctly dismissed Restore's claims for
      injunctive relief ........................................................................44

      A.    The district court correctly held that Restore's claims for
            injunctive relief are moot ..............................................45

      B.    Restore's claims for injunctive relief are time-barred.................48

IV.   The district court properly denied leave to amend ...............51

Conclusion.................................................................................................54

ii

# TABLE OF CITATIONS

Page

## CASES

*Adler* v. *Duval County School Board,*
112 F.3d 1475 (11th Cir. 1997)................................................45, 46

*Alan's of Atlanta, Inc.* v. *Minolta Corp.*, 903 F.2d 1414 (11th Cir. 1990).......42

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009)................................................33

*Aurora Enterprises, Inc.* v. *National Broadcasting Co.,*
688 F.2d 689 (9th Cir. 1982)................................................50

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ........................................53

*Bigelow* v. *RKO Radio Pictures*, 327 U.S. 251 (1946) ........................................40

*Bivens Gardens Office Building* v. *Barnett Bank of Florida,*
906 F.2d 1546 (11th Cir. 1990)................................................32

*Black Warrior Riverkeeper, Inc.* v. *U.S. Army Corps of Engineers,*
781 F.3d 1271 (11th Cir. 2015)................................................49

*Brunswick Corp.* v. *Riegel Textile Corp.,*
752 F.2d 261 (7th Cir. 1984)................................................11, 38

*California* v. *American Stores Co.* ................................................50

*Center for Biological Diversity* v. *Hamilton,*
453 F.3d 1331 (11th Cir. 2006)................................................ 25-26, 27

*Cope* v. *Anderson*, 331 U.S. 461 (1947)................................................49

*Coventry First, LLC* v. *McCarty*, 605 F.3d 865 (11th Cir. 2010) ....................51

*CSX Transportation, Inc.* v. *Norfolk Southern Railway Co.,*
114 F.4th 280 (4th Cir. 2024)................................................22, 23, 25, 30, 31

Page

Cases—continued:

*David Orgell, Inc.* v. *Geary's Stores, Inc.*, 640 F.2d 936 (1981) .......................22

*Fedance* v. *Harris*, 1 F.4th 1278 (11th Cir. 2021)................................................13

*Garelick* v. *Goerlich's Inc.*, 323 F.2d 854 (6th Cir. 1963) ................................23

*Gas Utilities Co. of Alabama* v. *Southern Natural Gas Co.*,
    996 F.2d 282 (11th Cir. 1993)................................................................38

*Grayson* v. *Allen*, 491 F.3d 1318 (11th Cir. 2007) ........................................ 49-50

*Hanover Shoe, Inc.* v. *United Shoe Machinery Corp.*,
    392 U.S. 481 (1968) ................................................................................30

*Hayes* v. *Solomon*, 597 F.2d 958 (5th Cir. 1979) ................................................42

*Higgins* v. *New York Stock Exchange, Inc.*,
    942 F.2d 829 (2d Cir. 1991) ...................................................................37

*Hipp* v. *Liberty National Life Insurance Co.*,
    252 F.3d 1208 (11th Cir. 2001)..........................................................26, 27

*Imperial Point Colonnades Condominiums, Inc.* v. *Mangurian*,
    549 F.2d 1029 (5th Cir. 1977)..............................................................28

*Kaiser Aluminum & Chemical Sales, Inc.*
    v. *Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982)....................50, 51

*Keohane* v. *Florida Department of Corrections Secretary*,
    952 F.3d 1257 (11th Cir. 2020)..........................................................13

\**Klehr* v. *A.O. Smith Corp.*, 521 U.S. 179 (1997)......19, 20, 21, 25, 28, 29, 35, 36

*Lehman* v. *Lucom*, 727 F.3d 1326 (11th Cir. 2013)................................21, 24, 29

*Lucasys Inc.* v. *PowerPlan, Inc.*,
    576 F. Supp. 3d 1331 (N.D. Ga. 2021)..............................................40

Page

Cases—continued:

*Midwestern Machinery Co.* v. *Northwest Airlines, Inc.*,
 92 F.3d 265 (8th Cir. 2004)..................................................................23, 24

*Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*,
 198 F.3d 823 (11th Cir. 1999)..........................................................12, 20, 30

*Multidistrict Vehicle Air Pollution, In re*, 591 F.2d 68 (9th Cir. 1979).... 37-38

*National Advertising Co.* v. *City of Raleigh*,
 947 F.2d 1158 (4th Cir. 1991)........................................................................23

*National Farmers' Organization, Inc.*
 v. *Associated Milk Producers, Inc.*, 850 F.2d 1286 (8th Cir. 1988)..............40

*National Parks & Conservation Association, Inc.*
 v. *Tennessee Valley Authority*, 502 F.3d 1316 (11th Cir. 2007).............. 48-49

*Nussbaumer* v. *Secretary, Florida Department of Children
 & Families*, 150 F.4th 1371 (11th Cir. 2025) ....................................................48

*Oliver* v. *SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014)...............................42, 43, 49

*Pace Industries, Inc.* v. *Three Phoenix Co.*,
 813 F.2d 234 (9th Cir. 1987)......................................................................37, 38

*Peck* v. *General Motors Corp.*, 894 F.2d 844 (6th Cir. 1990) ............................29

*Peter Letterese & Associates, Inc.* v. *World Institute of Scientology
 Enterprises*, 533 F.3d 1287 (11th Cir. 2008)....................................................49

*Petrella* v. *Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)..........................50

*\*Pilkington* v. *United Airlines*,
 112 F.3d 1532 (11th Cir. 1997).......................................12, 20-22, 24, 25, 29, 36

*Pinnacle Advertising & Marketing Group, Inc.*
 v. *Pinnacle Advertising & Marketing Group, LLC*,
 7 F.4th 989 (11th Cir. 2021) ............................................................................49

v

Page

Cases—continued:

*Platinum & Palladium Antitrust Litigation, In re,*
    61 F.4th 242 (2d Cir. 2023)....................................................................38

*Poster Exchange, Inc.* v. *National Screen Service Corp.,*
    456 F.2d 662 (5th Cir. 1972)...............................................................11, 37
    517 F.2d 117 (5th Cir. 1975)......................................................12, 24, 29, 36

*Russell* v. *Todd,* 309 U.S. 280 (1940)............................................................49, 51

*Samsung Electronics Co.* v. *Panasonic Corp.,*
    747 F.3d 1199 (9th Cir. 2014)....................................................32, 42, 43

*Sanders* v. *Dooly County, Georgia,* 245 F.3d 1289 (11th Cir. 2001) ................50

*Sanger Insurance Agency* v. *HUB International, Ltd.,*
    802 F.3d 732 (5th Cir. 2015)....................................................................40

*SaurikIT, LLC* v. *Apple, Inc.,*
    No. 22-16527, 2023 WL 8946200 (9th Cir. Dec. 28, 2023).............................31

*Save Our Wetlands, Inc. (SOWL)* v. *United States Army Corps of
    Engineers,* 549 F.2d 1021 (5th Cir. 1977) ........................................................50

*Shipner* v. *Eastern Air Lines, Inc.,* 868 F.2d 401 (11th Cir. 1989)...................52

*Spanish Broadcasting Systems of Florida, Inc.* v. *Clear Channel
    Communications, Inc.,* 376 F.3d 1065 (11th Cir. 2004) ................................34

*Thomas* v. *Town of Davie,* 847 F.2d 771 (11th Cir. 1988) ................................53

*Travel Agent Commission Antitrust Litigation, In re,*
    583 F.3d 896 (6th Cir. 2009)....................................................................22, 53

*Troiano* v. *Supervisor of Elections in
    Palm Beach County, Florida,* 382 F.3d 1276 (11th Cir. 2004)......................47

*Trump* v. *CASA, Inc.,* 606 U.S. 831 (2025) ......................................................48

*US Airways, Inc.* v. *Sabre Holdings Corp.,* 938 F.3d 43 (2d Cir. 2019).........31

Page

Cases—continued:

*Varner* v. *Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004)................................32

*Warren* v. *DeSantis*, 125 F.4th 1361 (11th Cir. 2025)....................................45

*Whitesell Corp.* v. *Electrolux Home Products, Inc.*,
  154 F.4th 1289 (11th Cir. 2025) ................................................................13, 52

*Zenith Radio Corp.* v. *Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ................................................................18, 20, 37, 51

## STATUTES

Clayton Act, 15 U.S.C. §§ 12-27 ........................................................................14

  15 U.S.C. § 15...................................................................................................10

  15 U.S.C. § 15b...........................................................................................10, 18

  15 U.S.C. § 26...................................................................................................10

Copyright Act, 17 U.S.C. §§ 101-810 ................................................................50

Lanham Act, 15 U.S.C. §§ 1051-1127................................................................49

Sherman Act, 15 U.S.C. §§ 1-7 ...........................................................................9

  15 U.S.C. § 1..................................................................................................9, 53

  15 U.S.C. § 2......................................................................................................9

## MISCELLANEOUS

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (2025)....................25

  Section 320c3...................................................................................................25

  Section 320c4...................................................................................................30

  Section 320d ....................................................................................................37

## INTRODUCTION

The plaintiff in this case, Restore, complains of being excluded from the market for X/Xi EndoWrists by standard contract terms that the defendant, Intuitive, has used for decades.  The relevant limitations period is four years, and Restore's cause of action for its claims here accrued no later than July 2020; but Restore waited more than four years, until September 2024, to file this suit.  Confirming that Restore could have acted far more promptly, Restore filed another suit challenging the exact same restrictions in Intuitive's contracts for its earlier S/Si model in 2019.  Even after settling that lawsuit, it waited another year and a half before bringing any claims related to the X/Xi market.  Restore's claims are untimely, and its tardiness should not be rewarded.

Intuitive is the creator of the da Vinci, the first robot-assisted surgical system cleared by the Food and Drug Administration.  Key to the da Vinci's performance are Intuitive's proprietary EndoWrist instruments—surgical tools that attach to the da Vinci's robotic arms.  Given the complexity of the integrated robotic system and the potentially fatal risks to patients involved in surgery, Intuitive's contracts have, for more than 20 years, required hospitals using the da Vinci to use EndoWrists either made or "approved" by Intuitive.  And, for more than a decade, Intuitive has extended this contractual requirement to users of its da Vinci X and Xi models.

(1)

Restore is a third-party remanufacturer of medical instruments that, for years, has sought to sell remanufactured EndoWrists—specifically, EndoWrists that Restore has modified to bypass their computerized use counters so that they can be used beyond the limits established by Intuitive and cleared by the FDA. Restore has long contended that the approval requirements in Intuitive's contracts with hospitals are anticompetitive. In 2019, it brought a nearly identical lawsuit against Intuitive relating to the alleged market for EndoWrists compatible with prior-generation models of the da Vinci, the S and Si models. In that case, Restore alleged that the approval provisions in Intuitive's contracts (which are the same as the provisions at issue in this case) violated the antitrust laws.

Not only did Restore know about, and challenge, the allegedly anticompetitive approval provisions by 2019, Restore itself asserts that as of July 2020 those same approval provisions were preventing Restore from entering the alleged market for X/Xi EndoWrists. In order to sell remanufactured EndoWrists, a third party must have the technological capability to break into the computer chips built into EndoWrists, bypass their security features, and reset their use counters. In this case, Restore alleges that, if it were not for the approval provisions in Intuitive's contracts, Restore would have obtained that technological capability in July 2020 and would have entered the market for X/Xi EndoWrists by that date. Yet, Restore did not bring this suit until

September 2024. The applicable limitations period is four years. Whether measured from the latest date by which Restore became aware of the contractual provisions (2019) or the date on which, by Restore's own allegations, it would have been able to enter the alleged market for remanufacturing X/Xi model EndoWrists (July 2020), Restore's September 2024 suit came too late. Accordingly, the district court dismissed Restore's claims as time-barred.

The district court's decision was correct and should readily be affirmed. Restore principally argues that its claims are timely under the continuing-violation doctrine, because Intuitive continued to maintain its approval requirement within the statute of limitations period. But even a continuing *violation* still requires a new act and a new injury within the limitations period. And the injury Restore complains of—market exclusion—occurred no later than July 2020, when Restore itself contends it would have entered the alleged market in the absence of the allegedly anticompetitive provisions. The fact that da Vincis continued to be sold or leased with identical contractual terms past that date causes Restore no additional injury. Accordingly, no new causes of action arise with new sales, and the continuing-violation doctrine does not apply.

Restore also contends that the so-called speculative-damages exception applies. That narrow exception applies only during a period when the fact of injury is too speculative to support a lawsuit. As the district court found, there

3

was nothing speculative about Restore's alleged exclusion in July 2020. Restore's primary argument on this score is that its injury was speculative until shortly before it filed this suit because it was unclear whether it would obtain the technical ability to break the encryption on EndoWrists in order to reset them for future uses—a prerequisite to entering the alleged X/Xi EndoWrist market. But that theory is inconsistent with Restore's allegation that, but for the anticompetitive conduct that made developing decryption technology a poor investment, it would have started developing that technology in July 2019 and succeeded by July 2020. As a matter of antitrust law, then, it had a non-speculative injury and standing to file an antitrust suit by July 2020—more than four years before it actually did so. That is enough to defeat the narrow speculative-damages exception.

The district court faithfully applied well-established legal principles governing the limitations period. Its judgment of dismissal should be affirmed.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held that the continuing-violation doctrine did not apply.

2. Whether the district court correctly held that the speculative-damages exception did not apply.

3. Whether the district court correctly dismissed Restore's claims for prospective relief as moot and time-barred.

4

4.      Whether the district court correctly denied Restore leave to amend the complaint.

## STATEMENT OF THE CASE

### A.      Factual Background

1.      Intuitive created the da Vinci, a robot-assisted surgical system that combines the minimally invasive nature of laparoscopic surgery with the intuitive motions of traditional open surgical techniques. *See* D. Ct. Dkt. 21, ¶¶ 6-10. The da Vinci system allows a surgeon, sitting at a console, to see inside a patient's body with a stereoscopic high-definition camera. *See id.* ¶¶ 6-7. The surgeon uses hand controls to manipulate small, wrist-like surgical instruments, called EndoWrists, causing them to perform with precision surgical techniques such as grasping, suturing, and cauterizing inside the patient's body. *See id.* ¶¶ 6, 8.

Robot-assisted surgery with a da Vinci system offers several advantages over open and laparoscopic surgical techniques. *See* D. Ct. Dkt. 21, ¶ 7. It allows a surgeon to see inside the patient's body using high-definition cameras; provides an additional arm for surgeons to hold a third instrument; allows for an expanded range of motion over human wrists; and permits surgery without the need to make large incisions. *See id.* ¶ 6. As a result, patients can benefit from less bleeding and pain, shorter hospital stays, quicker recovery times, and less scarring. *See id.* ¶ 18. Intuitive has offered several models of its da

Vinci system over the years. As relevant here, Intuitive's third-generation da Vinci is the S or Si model, and its fourth-generation da Vinci is the X or Xi model. *See id.* at 2.

Because Intuitive's EndoWrists contain small components, including fine cables and tiny pulleys, and because reliable, precise movement is critical to their functionality, Intuitive's EndoWrists are cleared by FDA to be used only a limited number of times. *See* D. Ct. Dkt. 21, ¶ 48; D. Ct. Dkt. 25, at 28. Each EndoWrist contains a use counter preventing use beyond that limit. *See* D. Ct. Dkt. 21, ¶ 48. The da Vinci X/Xi uses a wireless connection for the communication of the instrument, calibration, and use count information, which "required [a] chip to be encrypted for security purposes." *Id.* ¶ 49. Unless the chip is decrypted, the use count cannot be reset for future uses. *See id.* ¶ 50. Restore "has not alleged—and does not allege—that the encryption of the chip violated the antitrust laws." *See id.* ¶ 49.

Rather, Restore's quarrel is with Intuitive's standard contract, which requires that Intuitive must approve any repairs or service to the da Vinci. *See* D. Ct. Dkt. 21, ¶ 53. Restore alleges that this approval requirement forces customers to purchase EndoWrist instrument replacements from Intuitive (rather than from third parties like Restore) to be able to use the da Vinci Surgical System. *Id.* ¶ 52. Those contractual provisions have been used by Intuitive "[f]or more than twenty years," *id.*, and Intuitive has always sold the

6

da Vinci X and Xi robots in the United States pursuant to the standard contract, *see id.* ¶ 55.

2.      Restore is an independent service provider of robotic surgical instruments for an additional cycle of uses and a seller of remanufactured robotic surgical instruments.  D. Ct. Dkt. 21, ¶ 1.  Restore "entered the S/Si EndoWrist market in July 2018" and was "able to repair S/Si EndoWrists with its own technology and process by July 2020." *Id.* ¶¶ 77, 80.

Beginning in 2019, Restore took a series of "affirmative steps" toward developing, marketing, and selling remanufactured X/Xi EndoWrists.  D. Ct. Dkt. 21, ¶ 82.  Restore entered into agreements to sell its X/Xi repair services in June 2019 and began developing the technical capability to perform its X/Xi EndoWrist modification in December 2019.  *See id.*  Restore itself alleges that, in July 2019, it began initial preparation for its application for FDA clearance. *See id.*  From 2020 through 2023, Restore took further steps to develop its technical capacities and build out its facilities to meet the alleged demand. *See id.*

Restore alleges that it would have had the capability to modify X/Xi EndoWrists by July 2020 absent Intuitive's requirement that its customers use only approved EndoWrists.  *See* D. Ct. Dkt. 21, ¶ 88.  In particular, Restore alleges that, "[b]ut for the anticompetitive conduct of Intuitive, [it] would have started the expensive and risky process to achieve the technological capability

7

to reset the usage count on the X/Xi EndoWrists as early as July 2019." *Id.* ¶ 88. And if it had done so, it would have "achieve[d] the technological capability to reset the usage counter" as "early as July 2020." *Id.*

3.     Restore is currently participating in the alleged market for remanufactured EndoWrists. In March 2023, Intuitive published a statement on its website confirming that it would not "consider it a breach of contract" if a customer "ch[ose] to purchase remanufactured instruments that have been remanufactured by a third party pursuant to and in compliance with a 510(k) clearance or equivalent granted by the FDA." D. Ct. Dkt. 21, ¶ 63. In other words, any FDA-cleared remanufactured instruments are deemed "approved" under Intuitive's contracts. By March 2025, Restore's subsidiary, Iconocare Health, obtained an FDA clearance to remanufacture X/Xi EndoWrists. D. Ct. Dkt. 35, ¶ 72; *see also* D. Ct. Dkt. 35-2, at 1. Restore sought approval from Intuitive to offer its FDA-cleared remanufactured EndoWrists to Intuitive customers; because, as Intuitive had publicly confirmed, its contracts allowed the use of FDA-cleared instruments, Intuitive responded that the request was "unnecessary." *See* D. Ct. Dkt. 36-1, at 13.

4.     In February 2019, Restore filed a complaint in the United States District Court for the Northern District of Florida, alleging that Intuitive's approval requirement, as applied to S/Si da Vinci robotic surgical systems, was anticompetitive in violation of the Sherman Act. *See* D. Ct. Dkt. 21, ¶ 79; *see*

8

*also Restore Robotics LLC* v. *Intuitive Surgical, Inc.*, Civ. No. 19-55 (N.D. Fla. Feb. 27, 2019). The 2019 complaint in the S/Si case did not allege anticompetitive conduct or injury associated with Restore's X/Xi business, *see* Civ. No. 19-55 (N.D. Fla.), Dkt. 77. Restore's complaint in this action states that, at the time it brought the S/Si lawsuit, it "could not bring any claims for injury to business repairing X/Xi EndoWrists" because it was "unable to reset the usage count on the X/Xi EndoWrists." D. Ct. Dkt. 21, ¶ 79.

## B.    Proceedings Below

1.    On September 18, 2024, Restore filed its initial complaint in this action. D. Ct. Dkt. 1. After Intuitive moved to dismiss the claims as time barred (among other grounds), Restore amended its complaint once as of right. D. Ct. Dkt. 16; D. Ct. Dkt. 21. In the operative version of the complaint, Restore brought claims for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. D. Ct. Dkt. 21, ¶¶ 92-97. Restore also brought claims for tying and exclusive dealing in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. D. Ct. Dkt. 21, ¶¶ 98-103. All four claims are based on Intuitive's standard contractual term of requiring customers to use EndoWrists made or approved by Intuitive, which has been in place for more than twenty years. *See* D. Ct. Dkt. 21, ¶¶ 52, 92-103. Restore sought

9

treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, and injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26. D. Ct. Dkt. 21, at 40-41.

2.    a.    Intuitive moved to dismiss for failure to state a claim. D. Ct. Dkt. 25. As relevant here, Intuitive argued that Restore's claims were time-barred because they were outside the Clayton Act's four-year limitations period. *Id.* at 14-16; 15 U.S.C. § 15b. Restore argued that even though it filed more than four years after its claim first accrued, the statute of limitations did not bar its claims under either the continuing-violations doctrine or the speculative-damages exception. *See* D. Ct. Dkt. 27, at 4-7.

Restore then moved for leave to amend its complaint a second time. D. Ct. Dkt. 34. In relevant part, Restore's proposed second amended complaint alleged that Restore received FDA clearance to market and sell remanufactured X/Xi EndoWrists on March 11, 2025, and it acknowledged that as a result Intuitive now considered Restore "approved" under its contracts. D. Ct. Dkt. 35, ¶¶ 70-72, 95. Intuitive opposed the amendment as futile because, as relevant here, it would not remedy the timeliness problem. D. Ct. Dkt. 36, at 10-14.

b.    The district court granted Intuitive's motion to dismiss and denied Restore's motion for leave to amend. D. Ct. Dkt. 42. In so doing, the district court noted that Restore "was aware of the standard contract terms since at

10

least 2019" and "alleges that it has been excluded from the aftermarket for repairing X/Xi EndoWrist instruments since July 2020." *Id.* at 8. Because Restore "failed to file this action by July 2024," the district court agreed that Restore's antitrust claims were time-barred. *Id.*

The district court rejected both of Restore's arguments on timeliness as lacking "any merit." D. Ct. Dkt. 42, at 9. Turning first to the speculative-damages exception, the district court explained that the exception "provides that an antitrust cause of action does not accrue until the claimant's damages are ascertainable." *Id.* (citing *Poster Exchange, Inc.* v. *National Screen Service Corp.*, 456 F.2d 662, 666 (5th Cir. 1972)). The court observed that the exception, which "seldom applies," comes into play only if it was unclear at an earlier date that the plaintiff "would suffer damages *at all*"—not simply that "the *degree* of harm to its business was speculative." *Id.* at 10, 13 n.6. Here, the court reasoned, the exception is inapposite because there had been "nothing speculative" about the competitive injury the contract provision allegedly caused to Restore's X/Xi business for years. *Id.* at 11. Indeed, "[e]xclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs." *Id.* (quoting *Brunswick Corp.* v. *Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984)). And that exclusion, the district explained, had occurred by July 2020, according to Restore's own allegations. *See id.* at 12.

11

Turning next to the continuing-violation doctrine, the district court explained that, under that doctrine, "a new cause of action accrues 'after the defendant commits (1) an overt act in furtherance of the antitrust conspiracy or (2) an act that by its very nature constitutes a continuing antitrust violation.'" D. Ct. Dkt. 42, at 14 (quoting *Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999)).  But a new "injurious act . . . during the limitations period" is required; "some pre-limitation action" is not enough, even if it has some "inertial consequences" that merely continue into the limitations period "unabated" but also unchanged.  *Id.* (quoting *Poster Exchange, Inc.* v. *National Screen Service Corp.*, 517 F.2d 117, 128 (5th Cir. 1975)).  The court rejected Restore's argument that Intuitive's continued enforcement during the limitations period of the earlier, purportedly exclusionary contract terms constituted a new injurious act.  *See id.* at 14-15.  Instead, the court determined that Intuitive's enforcement of those terms amounted to "reaffirmation of a previous act" that allegedly imposed "the same injuries" suffered outside the limitations period.  *Id.* at 15 (quoting *Pilkington* v. *United Airlines*, 112 F.3d 1532, 1537-1538 (11th Cir. 1997)).

The district court next dismissed Restore's claims for prospective relief on two alternative grounds.  D. Ct. Dkt. 42, at 18 n.11.  First, the court determined that the claims were barred by the equitable defense of laches, finding that "courts generally look to the same principles that animate the four-year

12

statute of limitations for antitrust damages when computing the laches period." *Id.* Second, the court concluded that Restore's claims for injunctive relief were moot because Restore was "no longer excluded from the putative aftermarket" given its concession that Intuitive "granted approval" in 2025. *Id.*

The district court denied as futile Restore's motion for leave to amend the complaint and granted Intuitive's motion to dismiss. D. Ct. Dkt. 42, at 18.

## STANDARD OF REVIEW

This Court reviews de novo a district court's order dismissing a complaint for failure to state a claim. *See, e.g.*, *Fedance* v. *Harris*, 1 F.4th 1278, 1283 (11th Cir. 2021).

This Court reviews de novo a district court's mootness determination, and it reviews any related factual findings for clear error. *See, e.g.*, *Keohane* v. *Florida Department of Corrections Secretary*, 952 F.3d 1257, 1265 n.2 (11th Cir. 2020).

Finally, this Court reviews de novo a district court's order denying leave to amend the complaint as futile. *See, e.g.*, *Whitesell Corp.* v. *Electrolux Home Products, Inc.*, 154 F.4th 1289, 1294-1295 (11th Cir. 2025).

## SUMMARY OF ARGUMENT

This case involves a straightforward application of this Court's precedents on statutes of limitations. The challenged contracts have been used in

the sale of the da Vinci X/Xi since 2014. Restore has known about them, and claimed to be injured by them, since at least 2019, when it sued Intuitive over the identical restrictions applicable to earlier-generation systems. And Restore alleges that but for those same contract restrictions it would have entered the alleged X/Xi EndoWrist market in July 2020. Yet Restore did not file suit until September 2024, missing the deadline set forth by the Clayton Act's four-year statute of limitations.

Restore does not dispute any step of the foregoing analysis. Instead, it relies on two exceptions to the ordinary accrual rules, the continuing-violation doctrine and the speculative-damages exception. The district court correctly rejected those arguments. The district court also correctly dismissed Restore's equitable claims as moot and time-barred, and it appropriately denied leave to amend as futile.

I.    The district court correctly held that the continuing-violation doctrine does not apply to this case. That doctrine applies where a defendant commits a new and independent act (1) that is not merely a reaffirmation of a previous pre-limitations period act and (2) that inflicts new and accumulating injury on the plaintiff. As binding precedent explains, a new clock begins to run only where a new injurious act occurs during the limitations period; consequences of pre-limitation actions are not enough. Here, Restore alleges that terms Intuitive has included in its contracts with X/Xi EndoWrist users since

14

2014 caused Restore's injury, by excluding it from the alleged market for repaired and replaced X/Xi EndoWrists. Intuitive maintained and enforced those contract terms for years before September 2020; Restore contends that Intuitive continued to enforce those terms after that date. But simply leaving in place a longstanding allegedly exclusionary contract term does not qualify as a new and independent act. The continuing-violation doctrine thus does not apply. Separately, the doctrine only benefits a plaintiff who was unable to determine at the time of the pre-limitations period violation that its rights were infringed. That is not Restore, which had previously sued Intuitive over identical contractual restrictions (albeit for a different model of the da Vinci).

Restore's contrary arguments lack merit. Restore contends that Intuitive committed "thousands" of limitations-restarting acts by entering into additional contracts containing the challenged restrictions. But that is incorrect, because those contracts did not cause harm to Restore over and above the harm Restore was allegedly already facing: market exclusion. Intuitive's enforcement of its contracts also did not give rise to a new cause of action. Contract enforcement is merely a reaffirmation of Intuitive's earlier, pre-limitations period decision to adopt the contractual restrictions, and Restore does not allege independent harm traceable to continued enforcement. Restore's claim that Intuitive somehow "broadened" its anticompetitive conduct rests on

15

threadbare assertions that are disconnected from its claims and not tied to its injury.

II.    The district court also correctly held that the speculative-damages exception does not apply.  That exception is a narrow one, reserved only for cases where evidence of damages—that is, evidence that *any* damages are warranted, not evidence of the specific *quantum* of damages—would be so speculative that the case could not go to a jury.  Where, as here, a plaintiff asserts a market-exclusion theory, a plaintiff can sue as long as it can show that it intends to enter the market and is prepared to do so.  By July 2020, Restore's alleged damages were not speculative.  It alleges that it had always intended to enter the alleged X/Xi EndoWrist market and, by July 2020, was capable of taking all necessary steps to do so.  Restore's damages—exclusion from the market—were therefore not speculative at that time.

Restore argues that its damages were previously too speculative because it could not know for "certain" whether it would be able to enter the market at all, as it first needed to break the encryption on the computer chip that limits EndoWrist instruments to a certain number of uses.  But Restore alleges that its failure to decrypt the chip sooner was itself caused by Intuitive's alleged anticompetitive contracts.  Under Restore's own allegations, those contracts were all that stood in the way of Restore entering the alleged market.  Restore thus had a sufficiently certain injury to file suit in July 2020

16

under familiar antitrust accrual rules. Indeed, Restore's claim of uncertainty is inconsistent with the contemporaneous business decisions alleged in its complaint.

III.    The district court correctly dismissed Restore's claims for injunctive relief. In March 2025, Restore obtained FDA clearance to remanufacture X/Xi EndoWrists. That clearance permits Restore to enter the alleged market, thus mooting its claims for prospective relief. Restore invokes the voluntary-cessation exception, but that exception is inapplicable because it is Restore's conduct, not Intuitive's, that mooted the claims. And Restore is incorrect that its 2025 approval provided only partial relief because it did not strike the contractual restrictions altogether; to the contrary, striking the contractual restrictions would provide no redress to Restore, which by its own account has already entered the alleged market and is approved under the contracts.

Even if they were not moot, Restore's claims for equitable relief would be time-barred. The concurrent-remedy doctrine provides that, if a party's legal remedies are time-barred, so are its corresponding equitable claims. That is the case here. The claims are also barred by the doctrine of laches, which generally applies according to the same rules that animate the statute of limitations.

17

IV.     Finally, the district court correctly denied leave to amend the complaint a second time as futile.  The proposed allegations do not cure the deficiencies identified by the district court, because they fail to establish new and independent conduct inflicting new injury for purposes of the continuing-violation doctrine.

## ARGUMENT

The limitations period for antitrust claims is four years from the date of accrual. 15 U.S.C. § 15b.  An antitrust claim accrues, and the limitations period begins to run, when "a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  In this case, the complaint alleges that Intuitive excluded Restore from the market for repaired or replaced X/Xi EndoWrists starting in 2014 by prohibiting hospitals from using EndoWrists that are not serviced either by Intuitive or by an independent service provider approved by Intuitive.  Restore alleges that, but for that allegedly anticompetitive conduct, it would have entered the market for servicing EndoWrists by July 2020.  Accordingly, Restore's cause of action accrued no later than July 2020.  Because Restore did not file this suit by July 2024, its claims are barred by the statute of limitations.

Restore does not dispute that, under those ordinary accrual rules, its claims are time-barred.  Instead, it contends that its suit was timely under either the continuing-violation doctrine or the speculative-damages exception.

18

The district court correctly concluded that neither of those narrow doctrines applies.

Restore also contends that its claims for injunctive relief were improperly dismissed by the district court. But Restore has now obtained FDA clearance and is participating in the alleged market, rendering its claims moot. In any event, Restore's claims for injunctive relief are time-barred by the concurrent-remedy doctrine and the doctrine of laches.

The district court's judgment of dismissal was correct, and it should be affirmed.

## I.    THE DISTRICT COURT CORRECTLY HELD THAT THE CONTINUING-VIOLATION DOCTRINE DOES NOT APPLY

Under the continuing-violation doctrine, the limitation period starts running again if a defendant commits a *new act* that violates the antitrust laws and if that new act imposes a *new injury* on the plaintiff. *Klehr* v. *A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). That doctrine does not apply here because Restore does not point to any new acts by Intuitive in the four years before it brought suit that caused new injury to Restore's business. Instead, Restore is simply trying to recover damages for the continued exclusion it alleges was caused by Intuitive's pre-September 2020 conduct: Intuitive's standard contract term of requiring the use of EndoWrists made or approved by Intuitive with the X/Xi da Vinci system. The district court correctly rejected Restore's

19

attempt to circumvent basic antitrust and accrual principles, as well as firmly established precedent.

**A.    The District Court Correctly Held That Restore Failed to Plead Any New Act Causing New Harm**

1.    Under the continuing-violation doctrine, a plaintiff may bring an antitrust action more than four years after his initial injury accrued if the plaintiff files suit within four years of the defendant allegedly committing either (1) "an overt act in furtherance of an antitrust conspiracy" or (2) an "act that by its very nature constitutes a continuing antitrust violation." *Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) (quoting *Zenith Radio*, 401 U.S. at 338). Although Restore repeatedly refers in its brief to a "continuing conspiracy," *see, e.g.*, Br. 41, its complaint alleges only unilateral conduct. *See* D. Ct. Dkt. 21, ¶¶ 92-103. Thus, the relevant question is whether it has plausibly pleaded a continuing antitrust violation.

An act constitutes a continuing violation sufficient to trigger its own statute of limitations only if it (1) is a "new and independent act that is not merely a reaffirmation of a previous act," and (2) inflicts "new and accumulating injury on the plaintiff." *Pilkington* v. *United Airlines*, 112 F.3d 1532, 1537-1538 (11th Cir. 1997) (quotation and emphasis omitted); *see also Klehr*, 521 U.S. at 190.[1]

---

[1] Although the continuing-violation doctrine applies regardless of the nature of the underlying claim, cases arising under the civil RICO Act are particularly relevant. Indeed, the Court in *Klehr* looked to "antitrust cases" in announcing

That framework reflects the well-established accrual rule that a plaintiff cannot use an "independent, new predicate act as a bootstrap to recover for injuries," even lingering injuries, "caused by [the old act] that took place outside the limitations period." *Klehr*, 521 U.S. at 190. Rather, a plaintiff must allege (1) new injurious conduct that (2) causes new "harm over and above the harm that" the pre-limitations conduct caused. *Id.*

2.    a.    Pursuant to those principles, courts have declined to find that a defendant commits a new act causing new injury simply by maintaining an allegedly unlawful pre-limitations policy into the limitations period. For example, in *Pilkington*, *supra*, this Court considered a suit by a group of airline pilots who crossed a picket line during a strike and suffered years of harassment by the striking pilots after the labor dispute was settled, including physical threats, assault, destruction of personal property, ostracism, and verbal insults. 112 F.3d at 1534. The plaintiffs alleged that the harassment began in 1985 but they filed their suit in 1992, after the expiration of the applicable limitations period. *Id.* This Court rejected plaintiffs' argument that "each time [they] suffered injury from the harassment a new RICO cause of action

---

its rule because "Congress consciously patterned civil RICO after the Clayton Act." 521 U.S. at 189; *see also Lehman* v. *Lucom*, 727 F.3d 1326, 1330-1331 (11th Cir. 2013).

accrued." *Id.* at 1536.  Rather, the Court held that, with each act of harass-ment, "the adverse impact on the plaintiffs' job performance may accumulate," but "the injury is not new and independent." *Id.* at 1537-1538.

Other circuits have reached similar conclusions where the defendant's course of conduct continues into the limitations period.  In *CSX Transporta-tion, Inc.* v. *Norfolk Southern Railway Co.*, 114 F.4th 280, 289 (2024), *cert. denied*, 145 S. Ct. 1921 (2025), the Fourth Circuit held that a railway shipping company's market-exclusion injury accrued upon the company's decision to impose an allegedly unlawful fee to access the rail terminal.  The court rejected the plaintiff's contention that the continued imposition of the fee within the limitations period created subsequent causes of action, reasoning that the con-tinuing conduct did not "inflict *new* harm causing *new* injury." *Id.* at 283.  In *In re Travel Agent Commission Antitrust Litigation*, 583 F.3d 896, 902 (2009), the Sixth Circuit held that the plaintiffs' market-exclusion injuries accrued when the defendants made the allegedly unlawful concerted decision to adopt a 0% commission policy for the sale of airline tickets by travel agents.  The court rejected the plaintiffs' argument that the defendants' maintenance of that commission policy, and application of that policy to in-period ticket sales, restarted the limitations period. *Id.*  And in *David Orgell, Inc.* v. *Geary's Stores, Inc.*, 640 F.2d 936, 938 (1981), the Ninth Circuit held that a cause of action for market exclusion accrued upon the "original decision not to deal with

22

the plaintiff" and that new causes of action did not arise from each of the defendant's subsequent refusals to deal.

These decisions demonstrate that maintaining a policy does not constitute a new act.  Instead, preserving an allegedly anti-competitive policy that was adopted in the pre-limitations period is, at most, "passive[] implement[ation]" that is merely a "reaffirmation of the policy's adoption."  *Midwestern Machinery Co.* v. *Northwest Airlines, Inc.*, 392 F.3d 265, 270 (8th Cir. 2004).  That means that "[e]xisting competitors must act when a rival initiates anti-competitive policies that do not require additional anti-competitive action to implement."  *Id.*  Subsequent refusals are simply a reaffirmation or implementation of the earlier decision not to deal.

The decisions in this line also establish that maintaining a policy of exclusion does not inflict "new" injury.  As the Fourth Circuit explained, because an excluded rival is injured "as soon as the exclusion begins," simply maintaining an exclusionary policy into the limitations period does not "inflict new harm causing new injury."  *CSX*, 114 F.4th at 290-291 (emphases omitted); *see also Garelick* v. *Goerlich's Inc.*, 323 F.2d 854, 856 (6th Cir. 1963) (noting that the mere fact that the defendant "continued in refusing to sell its products" did not create a new cause of action).  Although the excluded rival may feel "continual ill effects from [the] original violation," *National Advertising Co.* v. *City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991), such continuing ill effects do

not restart the clock. Where the injury is "not unfamiliar, strange or different" but simply "the same injury that has been accumulating since" the pre-limitations period conduct, no new claim has accrued. *Pilkington*, 112 F.3d at 1538.

    b.    Applying those well-established principles here leaves no doubt that, as the district court correctly held, the continuing-violation doctrine does not apply to save Restore's late-filed suit.

As Restore's complaint readily acknowledges, Intuitive has maintained standard contract terms that prohibit the repair and replacement of X/Xi EndoWrists without Intuitive's approval for at least four years before its suit. *See* D. Ct. Dkt. 21, ¶ 55. As Restore admits, Intuitive has "always" used those terms with every sale of a da Vinci X/Xi since 2014. *Id.* Intuitive's sale of additional da Vinci systems is simply a "reaffirmation of the policy's adoption," not new and independent conduct. *Midwestern Machinery*, 392 F.3d at 270. As longstanding precedent establishes, "the abatable but unabated inertial consequences of some pre-limitations action" do not restart the limitations period. *Poster Exchange, Inc.* v. *National Screen Service Corp.*, 517 F.2d 117, 128 (5th Cir. 1975); *see also Lehman*, 727 F.3d at 1332-1333; *Pilkington*, 112 F.3d at 1538. And here, while Intuitive's policy was perhaps "abatable," it nevertheless went "unabated," continuing to be reflected in the standard contracts and producing the same "inertial consequences" that this Court has held are insufficient to count as new and independent acts. *Poster Exchange*, 517

F.2d at 128; *see* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 320c3 (2025).

Independently fatal to Restore's continuing-violation argument, Restore failed plausibly to allege that Intuitive's decision to maintain its allegedly exclusionary contract terms into the limitations period caused Restore any harm "over and above the harm" already attributable to Intuitive's pre-limitations decision to include the approval provision in the standard terms of its sale agreements. *Klehr*, 521 U.S. at 190. Like the plaintiff in *CSX*, which alleged a continuing violation from the defendant's decision to "maintain[] an exclusionary price," Restore cannot show how Intuitive's maintenance of the allegedly exclusionary contractual terms inflicts "new harm causing new injury" beyond the exclusion Restore already experienced when Intuitive first imposed it. 114 F.4th at 291. Indeed, Restore's entire theory of the case is that the injury it suffers is "ongoing exclusion" from the alleged X/Xi EndoWrist aftermarket (Br. 28)—the exact same injury that it first experienced in July 2020 and that "has been accumulating [ever] since." *Pilkington*, 112 F.3d at 1538; *see* D. Ct. Dkt. 21, ¶ 88. The district court correctly determined that the continuing-violations doctrine does not apply.

3. That doctrine also does not apply here for a separate reason: it applies only to "situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred" at the time. *Center*

25

*for Biological Diversity* v. *Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006).  If an event "should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine."  *Id.* (citation omitted).  This is particularly so for a "claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief."  *Hipp* v. *Liberty National Life Insurance Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001) (quotation omitted).

That principle forecloses the application of the continuing-violation doctrine here.  Restore was on notice of the alleged violation it asserts in this case for years before it filed this suit.  Indeed, in 2019, Restore filed an action challenging the identical contractual restrictions, alleging that those restrictions excluded it from the market for S/Si EndoWrists.  *See* D. Ct. Dkt. 21, ¶ 79.  And Restore was indisputably aware of the alleged market for X/Xi EndoWrists at the time.  Indeed, Restore admits that it "took a series of affirmative steps" beginning in June 2019 to "enter the X/Xi EndoWrist market."  *Id.* ¶ 82.  Restore was thus on notice by February 2019, at the latest, that the contractual terms that excluded it from the alleged X/Xi market were the same ones it was claiming in court violated the antitrust laws.  Put another way, by February 2019, Restore could "determine that a violation had occurred" with respect to the alleged X/Xi EndoWrist market, just as it had "determine[d]"

26

that a violation had occurred as to the S/Si EndoWrist market. *Center for Biological Diversity*, 453 F.3d at 1335.

Restore claims that it could not bring any claims for injury to the business of repairing X/Xi EndoWrists in 2019 because it was "unable to reset the usage count on the X/Xi EndoWrists." D. Ct. Dkt. 21, ¶ 79. As discussed below, Restore is incorrect that it was precluded from bringing suit. *See* pp. 36-44. The continuing-violation doctrine has no application when a party is trying to benefit from "knowingly fail[ing] to seek relief." *Hipp*, 252 F.3d at 1222. And that is exactly what Restore is attempting to do here. If it had sued in 2019, and if its suit were meritorious, it could have cleared both the legal and technological obstacle to entering the alleged market years ago. Rather than going to court in 2019, Restore sat back; now, it is attempting to sue for treble the value of its asserted lost profits in lieu of actually earning those profits by competing. *See* D. Ct. Dkt. 21, at 40. Restore should not be permitted to seek recovery for an alleged violation it knowingly permitted to continue.

## B.    Restore's Arguments To The Contrary Lack Merit

In its effort to circumvent those well-established principles, Restore tries its hand at a novel theory. It contends that Intuitive restarted the limitations period every time it entered into a contract to sell or lease a da Vinci X/Xi or enforced such a contract. Br. 33. In the alternative, it contends that Intuitive restarted the limitations period by "broadening" its exclusionary

27

conduct during the limitations period. Br. 38. None of those contentions is sufficient to revive Restore's stale claim; Restore does not plausibly allege any new and independent act causing Restore new and independent harm within the limitations period.

1.    a.    Restore's attempt to convert Intuitive's failure to eliminate a pre-limitations contract term into thousands of limitations-restarting acts is premised on a fundamental misunderstanding of the accrual rules. As discussed above, *see* pp. 20-21, a new claim accrues only when new conduct causes "new harm over and above" the harm that earlier acts caused. *Klehr*, 521 U.S. at 190. A plaintiff therefore cannot attempt to use allegedly new conduct as a "bootstrap" to recover for injuries caused by earlier conduct, even if felt in the present day. *Id.* at 189. Where "a defendant commits an act injurious to plaintiff outside the limitations period, and damages continue to result from that act within the limitation period, no new cause of action accrues." *Imperial Point Colonnades Condominiums, Inc.* v. *Mangurian*, 549 F.2d 1029, 1035 (5th Cir. 1977).

Restore's entire argument hangs on that impermissible bootstrap. Restore theorizes that Intuitive commits an independent act every time it makes a sale by entering into a contract whose terms "keep it[] . . . out" of the market. Br. 35. But Restore fails to explain how each new sale inflicts any "harm over and above" the harm inflicted by Intuitive's *original decision* to

28

adopt the policies that allegedly exclude Restore from the market. *Klehr*, 521 U.S. at 190. That alleged harm is exclusion from the market; an additional sale might increase the value of that market, but it does not further exclude Restore. The fact that Restore's alleged injuries "have a rippling effect into the future only establishes that [it] might have been entitled to future damages if [it] had brought suit within four years of the commission" of that act. *Peck* v. *General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990).

b.     Restore next relies on *Poster Exchange*, contending that it supports the sweeping proposition that any in-period exclusionary act will restart the limitations period as long as the rival experiences "ongoing exclusion," regardless of whether the act actually causes distinct harm. *See* Br. 28-29. But *Poster Exchange* drew a careful distinction—which Restore's argument quotes but fails to apply—between injuries actually caused by "injurious act[s]" taken during the limitations period and those caused by the "abatable but unabated inertial consequences" of maintaining some pre-limitations decision to exclude. 517 F.2d at 128. That distinction has been reinforced repeatedly by this Court. *Pilkington*, 112 F.3d at 1537-1538; *Lehman*, 1330-1331. And it is essential to reconciling *Poster Exchange* with the Supreme Court's subsequent decision in *Klehr*, which specifies that a plaintiff must show injury "over and above the harm that the earlier acts caused." *Klehr*, 521 U.S. at 190.

29

As explained, the acts Restore alleges fall squarely in the latter category of unabated inertial consequences; Restore does not allege that Intuitive's contractual restrictions were anything but a final policy that immediately and permanently excluded Restore from the alleged market until it could obtain approval.

c.    Restore's analogy (Br. 28, 30, 33) to cases in which *consumers* are injured by anticompetitive conduct does not help its case either. *See, e.g., Morton's Market*, 198 F.3d at 828; *Hanover Shoe, Inc.* v. *United Shoe Machinery Corp.*, 392 U.S. 481, 483-484, 502 n.15 (1968). In those cases, the consumer's antitrust injury is paying supracompetitive prices. *See, e.g., Hanover Shoe*, 392 U.S. at 483-484, 502 n.15. Because of the nature of that injury, the consumer can suffer new injuries that support new causes of action every time it pays an artificially inflated price. *See id.*; *CSX Transportation*, 114 F.4th at 290. By contrast, a competitor's injury is exclusion from the market. The competitor feels that injury "immediately": *viz.*, as soon as it is driven out of the market. Areeda & Hovenkamp ¶ 320c4 (explaining that customers "are not injured until after the monopolist causes them injury through higher prices" but "competitors are injured immediately by predatory pricing"); *CSX Transportation*, 114 F.4th at 290. Acts that reaffirm or maintain that policy of exclusion do not inflict new and accumulating injury each day; instead, the excluded rival simply experiences the same static injury: exclusion. *See CSX*

*Transportation*, 114 F.4th at 290.  Therefore, Restore's argument (Br. 33) that each da Vinci sale allegedly "blocks [it] from winning a sale" and restarts the statute of limitations period makes little sense.  Unlike a consumer who incurs new costs each time he makes a purchase, Restore experiences no new harm each time Intuitive enters into a contract with a third party.

2.    Next, Restore contends (Br. 30-31) that Intuitive restarted the limitations period each time that it enforced the approval provision.  For that proposition, it points to two vague allegations from the complaint:  (1) that, at some point in 2022, Intuitive "instructed" a surgery center that it "could not use EndoWrists that had been reset for an additional cycle of uses" by Restore; and (2) at some unspecified time, Intuitive "informed" a "hospital consulting company" that Intuitive "will not cooperate with them" if they "or its clients deal with Restore."  D. Ct. Dkt. 21, ¶¶ 61, 68.

Contract enforcement is not an act that restarts the limitations period. Other circuits have repeatedly held that enforcing a contract according to its terms is simply a "manifestation" or reaffirmation of the initial decision to adopt the contract, "rather than an independent overt act of its own."  *US Airways, Inc.* v. *Sabre Holdings Corp.*, 938 F.3d 43, 68-69 (2d Cir. 2019) (citing numerous other circuits that had adopted such a rule); *see also*, *e.g.*, *SaurikIT, LLC* v. *Apple, Inc.*, No. 22-16527, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023) (rejecting the argument that Apple reset the statute of limitations each

31

time it sold products with a contractual term that reflected a pre-limitations exclusionary policy choice). That principle should apply with full force here, especially because Restore was "fully aware" in the pre-limitations period of the allegedly harmful terms in Intuitive's contracts. *Varner* v. *Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004).

Even if contract enforcement could constitute a new and independent act, Restore's allegations would not suffice to extend the limitations period because Restore alleges no new and independent harm beyond the market exclusion it was already experiencing from Intuitive's pre-period conduct. *See Bivens Gardens Office Building* v. *Barnett Bank of Florida*, 906 F.2d 1546, 1552 n.9 (11th Cir. 1990), *abrogated on other grounds by Rotella* v. *Wood*, 528 U.S. 549 (2000). Restore argues to the contrary (Br. 30-31) based on the Ninth Circuit's statement in *Samsung Electronics Co.* v. *Panasonic Corp.*, 747 F.3d 1199, 1204 (2014), that "acts taken to enforce a contract were overt acts that restarted the statute of limitations." But there, the contract enforcement inflicted harm on the plaintiff by "requir[ing] it to make license payments." *Id.* Here, Restore points to no new and independent harm that it has experienced during the limitations period from Intuitive's alleged enforcement of its contracts with third parties according to the contracts' terms.

Finally, even putting aside whether the above acts of contract enforcement could extend the limitations period, the complaint's allegations fail plausibly to allege acts of contract enforcement within the limitations period. The first allegation is nothing but a vague reference to an "instruction" to a customer; the second fails to even set forth a date when the alleged conduct occurred. Such "bare assertions" do not plausibly allege acts of contract enforcement within the limitations period. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 681 (2009).

3.    Restore also makes the conclusory assertion that Intuitive "broaden[ed]" its exclusionary conduct at some unspecified time by "impos[ing] new contract terms to block Restore from collecting used EndoWrists" and "extend[ing]" the approval provision to the next generation of robots, the da Vinci 5. Br. 38 (citing D. Ct. Dkt. 21, ¶¶ 15, 67). Restore did not rely on those allegations before the district court. *See* Dkt. 27, at 4-7. And with good reason. Both allegations suffer from the same fundamental defect plaguing every other aspect of Restore's complaint: they fail to allege a new and accumulating harm to Restore.

As to the alleged prohibition on the collection of used instruments, Restore fails to allege a distinct antitrust violation, much less a new and timely injury from such a violation. Restore's claims center around the alleged exclusive-dealing requirement and the usage limit for EndoWrists; they have nothing to do with an alleged prohibition on collecting used instruments. To assert

33

a violation of antitrust laws based on that prohibition, Restore would need additional allegations, including an allegation that there are no procompetitive justifications for the challenged conduct. *See Spanish Broadcasting Systems of Florida, Inc.* v. *Clear Channel Communications, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004). But the complaint does not contain any. *See* D. Ct. Dkt. 21, ¶¶ 72-76. And fatal to its argument as to the statute of limitations, Restore does not allege any injury directly tied to this new alleged prohibition.

Restore next points (Br. 38) to Intuitive's alleged use of the "same or similar terms and conditions" in contracts for the sale or lease of the da Vinci 5, the next generation of da Vinci systems after X/Xi. *See* D. Ct. Dkt. 21, ¶ 90. But that argument would move the goalposts by expanding the relevant market beyond the one it alleged in Restore's complaint: the "market for service and replacement of X/Xi EndoWrist instruments *for use with the da Vinci X and Xi Surgical Systems*." D. Ct. Dkt. 21, at 1 (emphasis added). For that reason alone, Restore's theory is precluded.

But even if the da Vinci 5 were properly construed to be part of the alleged market, Restore cannot plausibly show how extension of the approval provision to a new generation of contracts has caused it any new harm. Restore's complaint alleges only that the da Vinci 5 is "available to a small number of customers" without "wider commercial introduction." D. Ct. Dkt. 21, ¶ 15. And Restore further alleges that the "existing X/Xi EndoWrists" are

34

"compatible with" the da Vinci 5. *Id.* Restore does not assert any injury tied to the alleged extension of the contract terms to the da Vinci 5. In contending otherwise, Restore again conflates the size of the alleged market with the fact of Restore's alleged exclusion from that market. *See* p. 29, *supra.* But regardless of the *type* of da Vinci sold or the number sold, Restore's injury remains static: that it has been excluded from the alleged EndoWrist aftermarket.

4.    Falling short on the law, Restore suggests that affirming the district court would "wipe[] the continuing-violation doctrine out of existence." Br. 32. But as the district court observed, "[Restore's] resort to hyperbole betrays the weakness of its continuing violation argument." D. Ct. Dkt. 42, at 15 n.9. It does not follow from the fact that Restore cannot plausibly plead the requirements for proving a continuing violation that actual continuing violations will be immunized. Nor will excluded rivals forever lose the chance to sue. Restore knew immediately—or at the latest, by July 2020—that it was excluded from the alleged X/Xi EndoWrist market. There was nothing stopping it from suing then to vindicate its rights. Yet Restore chose "simply to wait, sleeping on [its] rights" and allowing its alleged damages to pile up. *Klehr*, 521 U.S. at 187 (internal quotation marks and citation omitted).

Allowing Restore to sue now would impair the "basic objective—repose—that underlies limitations periods." *Klehr*, 521 U.S. at 187. And embracing its theory would give a would-be antitrust plaintiff a mechanism to

revive stale claims indefinitely by relabeling the "abatable but unabated" con-sequences of past conduct as new and accumulating harm. *Poster Exchange*, 517 F.2d at 128. That cannot be squared with *Klehr*, *Poster Exchange*, or *Pilk-ington*. The district court thus correctly rejected Restore's arguments and properly concluded that the continuing-violation doctrine does not apply.

## II. THE DISTRICT COURT CORRECTLY DETERMINED THAT THE SPECULATIVE-DAMAGES EXCEPTION DOES NOT APPLY

The district court correctly determined that the speculative-damages exception did not extend the four-year limitations period in this case. *See* D. Ct. Dkt. 42, at 9-13. The court first noted that, "to avail itself" of the specula-tive-damages exception, Restore "must plausibly allege that it was unclear" at the relevant time "whether it would suffer damages *at all* due to Intuitive's alleged conduct." *Id.* at 10. It then observed that market exclusion claims give rise to a claim for damages "as soon as the exclusion occurs." *Id.* at 11 (citation omitted). Applying that standard, the district court determined that the spec-ulative-damages exception does not apply to Restore's claim, because Restore alleges that it had been excluded from the EndoWrist aftermarket since at least 2020 and its alleged damages were thus cognizable in 2020. *Id.* at 12. The district court was correct at each step.

36

**A.    Restore's Own Allegations Establish That It Suffered Non-Speculative Injury Starting In 2019**

1.    a.    A cause of action does not accrue where "the damages caused by an antitrust injury are so speculative that the court is unwilling to estimate them" at the time of injury.  *Higgins* v. *New York Stock Exchange, Inc.*, 942 F.2d 829, 832 (2d Cir. 1991); *see Zenith Radio,* 401 U.S. at 339-340. In those situations, the limitations period does not begin to run until future damages are no longer "unprovable."  *Poster Exchange, Inc.* v. *National Screen Services Corp.*, 456 F.2d 662, 667 (5th Cir. 1972) (quoting *Zenith Radio*, 401 U.S. at 339).

That situation, however, rarely arises.  The exception does not apply to an "uncertain *extent* of damages, which does not prevent recovery."  *Pace Industries, Inc.* v. *Three Phoenix Co.*, 813 F.2d 234, 240 (9th Cir. 1987) (emphasis added); *see also* Areeda & Hovenkamp ¶ 320d ("The courts  .  .  . distinguish the uncertainty that prevents any recovery and shows that no cause of action has yet arisen from the mere uncertainty in damage measurement.") (citing *Poster Exchange*, 456 F.2d at 666).  Instead, when a cause of action accrues, the statute of limitations for "all provable damages that will flow in the future" immediately begins to run.  *Zenith Radio*, 401 U.S. at 339.  While it is often the case that "damages are better proven at a later time," the doctrine applies only where the available evidence was not sufficient to "allow the issue to go to the jury."  *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 74 (9th

37

Cir. 1979) (citation omitted).  That rarely occurs.  Antitrust law tolerates "[s]ome degree of uncertainty," and a complicated damages calculation "is hardly beyond the ken of the federal courts."  *In re Platinum & Palladium Antitrust Litigation*, 61 F.4th 242, 265 (2d Cir. 2023) (citations omitted).

b.　In a market-exclusion case, "a showing of an intention and preparedness to enter the business  .  .  .  give[s] a plaintiff a cause of action for being foreclosed from the market."  *Gas Utilities Co. of Alabama* v. *Southern Natural Gas Co.*, 996 F.2d 282, 283 (11th Cir. 1993).  As Judge Posner explained in *Brunswick Corp.* v. *Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984), "[e]xclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs  .  .  .  even though, in the nature of things, the victim's losses lie mostly in the future."  Lest the four-year limitations period be tolled "indefinitely in a very large class of antitrust suits," the standard time-of-injury rule applies to market-exclusion claims except in "special circumstances."  *Id.*; *accord Pace Industries*, 813 F.2d at 239-240.

2.　Applying the foregoing principles, the district court properly held that the speculative-damages exception is unavailable here.  The crux of Restore's asserted injury is that it was excluded from the alleged aftermarket for the X/Xi EndoWrist instruments.  D. Ct. Dkt. 21, ¶ 69.  Restore alleges that it "always intended to expand from the S/Si EndoWrist market into the X/Xi

EndoWrist market" and that it "was capable of taking all the necessary steps to enter the X/Xi EndoWrist market by July 2020." *Id.* ¶¶ 80-81. If Restore had sued then, there would have been little question that it had at least alleged an injury caused by the allegedly anticompetitive conduct. Indeed, Restore alleges that, "[n]o later than June 2019," it had already "executed an agreement with . . . a medical supply company . . . to sell Restore's repair services, which expressly included the X/Xi EndoWrists." *Id.* ¶ 82. The district court thus correctly determined that Restore was capable of bringing its case in July 2020, so the speculative-damages exception does not apply.

## B.    Restore's Contrary Arguments Are Unavailing

Restore makes three principal arguments in support of the speculative-damages exception on appeal. Each fails.

1.    Restore principally contends that its suit was timely because, before February 2024, it "did not know whether or when it could develop the decryption technology needed to enter the market." Br. 48. Therefore, Restore contends that it could not "have proved its post-July 2020 damages without speculation" until February 2024. *Id.*

That argument does not withstand scrutiny. Restore's fundamental premise—that the lack of technological capability to enter the market makes its damages speculative—would not have been a bar to suit in this case, because Restore alleges that its inability to break the encryption on Intuitive's

39

computer chips was itself caused by the alleged anticompetitive contract provisions. The only reason Restore provides for not decrypting the use limiter earlier was that Intuitive, by virtue of its contracts, "was blocking any and all access to customers indefinitely." D. Ct. Dkt. 21, ¶ 81. Given that theory, Restore's measure of damages would have "reflect[ed] the difference between its performance in a hypothetical market free of all antitrust violations and its actual performance in the market infected by the anticompetitive conduct." *National Farmers' Organization, Inc.* v. *Associated Milk Producers, Inc.*, 850 F.2d 1286, 1306 (8th Cir. 1988); *see also Bigelow* v. *RKO Radio Pictures*, 327 U.S. 251, 263-264 (1946). Accepting its allegations as true, Restore would have been able to assume that it was able to decrypt the use limiter in the "hypothetical market." Because the "allegation of anticompetitive conduct . . . strikes directly at the obstacle that kept [Restore] from entering the market," Restore's inability to decrypt the use limit did not bar it from bringing suit in July 2020. *See Sanger Insurance Agency* v. *HUB International, Ltd.*, 802 F.3d 732, 740 (5th Cir. 2015); *see also Lucasys Inc.* v. *PowerPlan, Inc.*, 576 F. Supp. 3d 1331, 1346 (N.D. Ga. 2021).

In any event, Restore's theory that its damages were too speculative in July 2020 is inconsistent with its contemporaneous conduct as alleged in the complaint. Restore admits that it had taken "affirmative steps" beginning in June 2019 to "enter the X/Xi EndoWrist market" by "negotiating agreements

40

with vendors and distributors, acquiring the necessary equipment, inventory, and facilities and developing the relevant tools." D. Ct. Dkt. 21, ¶ 82. According to the complaint, Restore already had at least one executed agreement with a "company with more than $20 billion in annual sales" to sell its "repair" services for the X/Xi EndoWrists. *Id.* Restore was negotiating an agreement with a business partner to prepare and file for FDA clearance. *Id.* And it was working with engineering firms to develop "the technological capability to reset the usage counter on the X/Xi EndoWrists." *Id.* Taken together, those allegations render implausible Restore's claim that it would not have been able to prove damages beyond a speculative level by July 2020. Similarly, Restore's claim that it learned only in February 2024 that "it would have achieved that capability within one year" if "not for the anticompetitive conduct," *id.* ¶ 88, is incompatible with Restore's September 2022 statement to the district court in the S/Si litigation that it had "reached a fairly high confidence level that [it] can reset the usage limits." Dkt. 185, at 32, Civ. No. 19-55 (N.D. Fla. Sept. 9, 2022).

Restore's position also lacks any basis in the law. Restore does not point to a single case in which damages were held to be speculative because the alleged anticompetitive conduct caused multiple impediments to entry into the market. To the contrary, it is commonplace for competitors to bring suits challenging market exclusion where there are multiple plausible explanations for

41

the would-be competitor's failure to compete in the relevant marketplace. *See, e.g.*, *Alan's of Atlanta, Inc.* v. *Minolta Corp.*, 903 F.2d 1414, 1427-1428 (11th Cir. 1990). Antitrust law does not require "an actual going business to establish a private antitrust injury." *Hayes* v. *Solomon*, 597 F.2d 958, 973 (5th Cir. 1979). Restore offers no reason why it was any different.

2.    Restore is able to point (Br. 49) to only two decisions that have ever applied the speculative-damages exception, both of which were decided by the same Ninth Circuit panel in closely related cases. *See Samsung*, 747 F.3d 1199; *Oliver* v. *SD-3C LLC*, 751 F.3d 1081 (2014). Neither case supports Restore.

The district court correctly concluded that *Samsung* is "easily distinguishable." D. Ct. Dkt. 42, at 13 n. 6. There, Samsung alleged that Panasonic violated the antitrust laws by requiring all manufacturers licensed to produce its proprietary SD cards to pay a royalty. *See* 747 F.3d at 1201. Samsung filed suit more than four years after Panasonic first imposed its royalty requirement. The Ninth Circuit held that the speculative-damages exception applied: at the time of the adoption of the alleged anticompetitive license, "Samsung was not in the SD card market" and nobody "kn[ew] for certain whether Samsung would enter that market." *Id.* at 1204-1205. Thus, if Samsung had sued then, its claim for damages would have been speculative. The facts of *Sam-*

42

*sung* bear little resemblance to this case. Restore "is in the business of servicing . . . and selling remanufactured robotic surgical instruments," D. Ct. Dkt. 21, ¶ 1; and it "always intended" to enter the alleged X/Xi EndoWrist market, *id*. ¶ 80. As the district court correctly noted, the amended complaint characterizes Restore as "waiting in the wings of the putative aftermarket . . . with only Intuitive's exclusionary contract terms keeping Restore Robotics at bay." D. Ct. Dkt. 42, at 13 n.6. That is a far cry from *Samsung*.

The Ninth Circuit's related decision in *Oliver* gets Restore no further. That case concerned the same royalty requirements as *Samsung*, but the plaintiffs were consumers of SD cards rather than a licensee. *See* 751 F.3d at 1084-1085. The speculative damages doctrine applied because, when Panasonic first imposed the royalty requirement, the consumers had not yet purchased SD cards, so it "would have been pure speculation whether [p]laintiffs would have been harmed by [d]efendants' alleged unlawful acts." *Id*. at 1087. Restore—an alleged competitor in the same industry as Intuitive that made investments to attempt to launch a product in the relevant market—is situated in an entirely different position from consumers who did not foresee that they would at some point need to buy SD cards at retail stores.

3.    Finally on this point, Restore contends (Br. 51) that the Court "need not guess" whether its damages were too speculative because, in 2022, Restore was "barred" from presenting evidence of X/Xi EndoWrist damages

43

in a trial over the S/Si EndoWrist restrictions on the ground that any X/Xi damages would be speculative.  Restore overstates the record in the S/Si litigation.

At no point did Restore attempt to assert a claim in that litigation for exclusion from the X/Xi EndoWrist market.  Instead, the question of damages for lost sales from the X/Xi EndoWrist market arose in the context of discovery and evidentiary disputes.  *See* Dkt. 185, at 34, Civ. No. 19-55 (N.D. Fla. Sept. 9, 2022) (hearing on unrelated discovery motion); Dkt. 192, at 2, Civ. No. 19-55 (N.D. Fla. Oct. 24, 2022) (discovery order); Dkt. 218, at 3, Civ. No. 19-55 (N.D. Fla. Dec. 30, 2022) (order excluding evidence).  As the district court below observed, it is "clear [the S/Si court] never made any finding in regard to speculation."  D. Ct. Dkt. 42, at 13 n.5.  The issue before the court "concerned threshold determinations of relevancy," to the issues as framed in the pleadings, "not whether [Restore's] claim was speculative."  *Id.*  There was no factual record about the X/Xi technology, and the parties did not submit briefs about Restore's potential entry into the X/Xi market.  The rulings in the S/Si litigation thus have no bearing on whether Restore could have brought its suit for antitrust damages in July 2020.

## III.    THE DISTRICT COURT CORRECTLY DISMISSED RESTORE'S CLAIMS FOR INJUNCTIVE RELIEF

As the district court correctly determined, Restore's claims for injunctive relief are both moot and untimely.  As to mootness:  because Restore chose

44

to pursue and obtained regulatory approval, it has now obtained the prospective relief it seeks—namely, the ability to market and sell its remanufactured EndoWrists in the X/Xi market.  As to timeliness:  Restore's claims are barred by the concurrent-remedies doctrine and by the doctrine of laches.

## A.    The District Court Correctly Held That Restore's Claims For Injunctive Relief Are Moot

A claim becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Warren* v. *DeSantis*, 125 F.4th 1361, 1364 (11th Cir. 2025) (citation omitted).  "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury."  *Adler* v. *Duval County School Board*, 112 F.3d 1475, 1477 (11th Cir. 1997).  Here, Restore's claim for injunctive relief is moot because Restore is no longer prohibited from selling remanufactured X/Xi EndoWrists.  The district court's mootness determination should not be disturbed.

1.    In its complaint, Restore asks for "injunctive relief  .  .  . to prevent the threat of loss or injury" from its exclusion from the market for repairing and remanufacturing X/Xi EndoWrists.  D. Ct. Dkt. 21, at 40.

In March 2025, Restore obtained clearance from the FDA to remanufacture X/Xi EndoWrists.  D. Ct. Dkt. 35, ¶ 69.  Two years earlier, in March 2023, Intuitive confirmed publicly that it will not "consider it a breach of contract by a customer  .  .  . who chooses to purchase remanufactured instruments that

45

have been remanufactured by a third party pursuant to and in compliance with 510(k) clearance." D. Ct. Dkt. 21, ¶ 63. Restore was accordingly approved by Intuitive to sell remanufactured EndoWrists as soon as Restore obtained FDA clearance. *See* D. Ct. Dkt. 36-1, at 13; *see also* D. Ct. Dkt. 35, ¶ 72. When Restore asked (after filing this lawsuit) for still further reconfirmation of this fact, Intuitive promptly provided it, both to Restore and to the public. *See* D. Ct. Dkt. 36-1, at 13; *see also* D. Ct. Dkt. 35, ¶ 72. Restore is now "market[ing] to customers interested in buying its remanufactured EndoWrists." D. Ct. Dkt. 35, ¶ 69. And it claims to be doing so successfully. *See, e.g.*, Restore, *Restore Robotics Surpasses 300 Hospitals in Robotic Instrument Recycling & Remanufacturing Program* (Oct. 14, 2025) <www.restorerobotics.com/oct-14-2025>.

Restore has therefore obtained outside of court exactly the prospective relief it contends is necessary from the court: approval to market and sell re-manufactured X/Xi EndoWrists. Restore now has "no legally cognizable need for relief declaring the policy [anticompetitive] and preventing [Intuitive]" from maintaining it in the future. *Adler*, 112 F.3d at 1477. "Any decision on the merits" regarding Intuitive's challenged practices "would be an impermis-sible advisory opinion." *Id.*

2.     Restore nonetheless contends (Br. 54) that the voluntary-cessa-tion doctrine applies to preclude mootness. Under that doctrine, a defendant's

voluntary cessation of challenged conduct does not moot a case unless "there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur." *Troiano* v. *Supervisor of Elections in Palm Beach County, Florida*, 382 F.3d 1276, 1283 (11th Cir. 2004). But the voluntary-cessation doctrine does not apply here, because mootness results from *Restore's* actions in obtaining FDA clearance. Restore never even mentions its own choice to obtain FDA clearance in its mootness discussion, even though that action was the basis of the district court's decision that its claims are moot. *See* D. Ct. Dkt. 42, at 19 n.11. And, critically, Restore does not identify anything that *Intuitive* changed after Restore filed this suit.

Restore also claims that its request for equitable relief is not moot because it obtained only "partial[]" relief. Br. 54-55 (citation omitted). According to Restore, more relief is available because, if it prevails in this case, the court could strike Intuitive's contract terms with hospitals, which Restore claims "still block customers from buying from Restore." *Id.* at 54. But Restore does not explain how the contract "blocks" customers from buying from Restore. Under the terms of the contract provisions that Restore seeks to strike, hospitals are already permitted to purchase Restore's remanufactured X/Xi EndoWrists. *See* D. Ct. Dkt. 21, ¶¶ 35, 57. And Restore has a letter from Intuitive acknowledging that Intuitive has approved Restore's services, and encouraging Restore to "share a copy of [the] letter" with its customers. D. Ct. Dkt. 36-

47

1, at 13; *see also* Restore, *Restore Robotics Receives FDA 510(k) Clearance for Two Additional da Vinci Xi Robotic Instruments* (Mar. 31, 2026) <https://www.restorerobotics.com/mar-31--2026> (explaining to customers that Intuitive "has granted approval under its contracts for Restore Robotics to remanufacture any EndoWrist that falls under the scope of any 510(k) clearance from the FDA"). Thus, Restore does not show how an order striking terms from contracts between Intuitive and third parties would redress any injury to *Restore.* Instead, the only way that such an order could theoretically change the status quo would be if it were to permit third parties who are not plaintiffs here, and who (unlike Restore) have not obtained FDA clearance or other authorization, *also* to sell remanufactured X/Xi EndoWrists. Setting aside that there would be no basis for such an order in any event, Restore cannot obtain equitable relief on behalf of others. *See Trump* v. *CASA, Inc.*, 606 U.S. 831, 852 (2025); *Nussbaumer* v. *Secretary, Florida Department of Children & Families*, 150 F.4th 1371, 1381 n.5 (11th Cir. 2025).

B.    **Restore's Claims For Injunctive Relief Are Time-Barred**

In addition, even if Restore's claim for injunctive relief were not moot, the district court properly dismissed it as time-barred. "[W]here a party's legal remedies are time-barred, that party's concurrent equitable claims generally are barred under the concurrent remedy doctrine." *National Parks & Conservation Association, Inc.* v. *Tennessee Valley Authority*, 502 F.3d 1316,

1326 (11th Cir. 2007); *accord Cope* v. *Anderson*, 331 U.S. 461, 464 (1947).  Because Restore's claim for damages is barred by the statute of limitations, its concurrent claim for injunctive relief is also barred.

Restore's claim for injunctive relief is also independently barred by the doctrine of laches.  The doctrine of laches bars a suit brought by a plaintiff "whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant."  *Black Warrior Riverkeeper, Inc.* v. *U.S. Army Corps of Engineers*, 781 F.3d 1271, 1283 (11th Cir. 2015) (quoting *Russell* v. *Todd*, 309 U.S. 280, 287 (1940)).  Courts "look to the same legal rules that animate the four-year statute of limitations" for damages actions.  *Oliver*, 751 F.3d at 1086 (citation omitted).  *Cf. Pinnacle Advertising & Marketing Group, Inc.* v. *Pinnacle Advertising & Marketing Group, LLC*, 7 F.4th 989, 1005 (11th Cir. 2021) (looking to the limitations period for an analogous state-law claim as the "touchstone for laches" in a Lanham Act case).  Thus, because Restore's claim for damages is barred by the statute of limitations, *see* pp. 19-44, *supra*, its claim for equitable relief is barred by the doctrine of laches.

Restore resists this conclusion by contending that "laches does not bar 'prospective relief.'"  Br. 52 (quoting *Peter Letterese & Associates, Inc.* v. *World Institute of Scientology Enterprises*, 533 F.3d 1287, 1321 (11th Cir. 2008)).  That is incorrect.  This Court regularly applies the equitable doctrine of laches to bar claims for prospective injunctive relief.  *See, e.g., Grayson* v.

49

*Allen*, 491 F.3d 1318, 1321-1322, 1326 (11th Cir. 2007); *Sanders* v. *Dooly County, Georgia*, 245 F.3d 1289, 1291 (11th Cir. 2001) (per curiam); *Save Our Wetlands, Inc. (SOWL)* v. *United States Army Corps of Engineers*, 549 F.2d 1021, 1023, 1026 (5th Cir. 1977).  And courts routinely apply laches to bar claims under the Sherman Act for prospective injunctive relief from alleged antitrust violations.  *See, e.g.*, *Aurora Enterprises, Inc.* v. *National Broadcasting Co.*, 688 F.2d 689, 693-694 (9th Cir. 1982); *Kaiser Aluminum & Chemical Sales, Inc.* v. *Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982); *see also California* v. *American Stores Co.*, 495 U.S. 271, 296 (1990).  Restore's contrary reliance on *Peter Letterese, supra*, and *Petrella* v. *Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), is inapposite; both cases concerned only the application of laches to claims filed under the Copyright Act *within* the applicable statute of limitations.  *See Peter Letterese*, 533 F.3d at 1297, 1320-1321; *Petrella*, 572 U.S. at 667, 683.  Neither case suggests that there is no time limit at all for claims for prospective relief, as Restore seems to argue.

Restore also contends (Br. 53) that the district court erred by relying on the four-year statute of limitations applicable to damages actions to establish undue prejudice.  However, "if the plaintiff's claim is brought outside the analogous limitations period, the bare fact of delay creates a rebuttable presumption of prejudice to the defendant."  *Kaiser Aluminum & Chemical Sales*, 677 F.2d at 1057 (internal quotation marks and citation omitted).  Where, as here,

a plaintiff brings equitable claims outside of the analogous limitations period, it "must show [its] delay is excusable and that there is no prejudice to the defendant." *Id.* (citing *Russell*, 309 U.S. at 287).  Restore does not contend that it can make that showing.  *See* Br. of Appellant 52-53.

## IV.   THE DISTRICT COURT PROPERLY DENIED LEAVE TO AMEND

This Court should also affirm the district court's decision to deny leave to amend a second time as futile.  Leave to amend is futile "when the complaint as amended would still be properly dismissed" because the amended claims still "fail as a matter of law." *Coventry First, LLC* v. *McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (internal quotation marks and citation omitted).  The district court properly applied that standard here in denying leave to amend.

The proposed amended complaint adds two allegations that Restore says render its suit timely.  First, Restore alleges that, in March 2025, it received clearance from the FDA to service X/Xi EndoWrists.  Second, Restore alleges that, in that same month, Intuitive approved (or reconfirmed its approval of) Restore's request to remanufacture EndoWrists.  *See* D. Ct. Dkt. 35, ¶¶ 69-72; Br. 56.  Those allegations do not constitute new and independent conduct that inflicts a new injury on Restore's business for purposes of the continuing-violation doctrine.  *See Zenith Radio*, 401 U.S. at 338.  Intuitive's conduct was not new, but simply the application of its longstanding contractual

51

provisions to a circumstance procured by Intuitive. And it did not injure Restore. To the contrary, it *eliminated* Restore's alleged injury (assuming there was any injury to begin with) by allowing Restore to enter the alleged market.

Restore also contends that leave to amend would not be futile because it "can allege on remand" that it "keeps losing sales" from Intuitive's conduct. Br. 57. Restore's request for a redo comes for the first time on appeal. Indeed, Restore does not identify allegations in its proposed second amended complaint that support that proposition. This Court does not "grant relief on the basis of facts or issues that were not presented to the district court." *Shipner* v. *Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (1989). Nor does Restore's late-breaking theory help it in any event: continued losses of sales flow from the initial adoption of the contractual terms, not from any in-period acts by Intuitive. *See* pp. 24-25, *supra*.

Finally, Restore suggests that it should receive leave to amend unless it is "beyond doubt" that any amended complaint would fail. Br. 55, 57. That is not the correct standard. Leave to amend is proper when "the complaint as amended would still be properly dismissed." *Whitesell Corp.* v. *Electrolux Home Products, Inc.*, 154 F.4th 1289, 1294 (11th Cir. 2025). In invoking the "beyond doubt" standard, Restore relies on outdated case law that permitted dismissal only when it "appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

52

*Thomas* v. *Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (citation omitted). That standard is no longer good law after the Supreme Court's decision in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 563 (2007).  Today, leave to amend the complaint is properly denied as futile when the proposed amended complaint fails plausibly to state a claim.

At bottom, the district court correctly concluded that any amendment would be futile because it rests on Restore's mistaken theory that an antitrust injury accrues anew each day that it continues.  If this Court were to adopt Restore's approach, "the applicable limitations period for a § 1 claim would be infinite—an antitrust plaintiff could routinely salvage an otherwise untimely claim by asserting that it continues to lose revenue because of past alleged anticompetitive conduct."  *Travel Agent*, 583 F.3d at 902.  Restore's new factual allegations do not overcome that critical legal flaw.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Kannon K. Shanmugam

WILLIAM B. MICHAEL
JOSH STALLINGS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

JAMES DURLING
KRISTA A. STAPLEFORD
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*

KANNON K. SHANMUGAM
MASHA G. HANSFORD
JAKE L. KRAMER
DAVIS POLK & WARDWELL LLP
  *1050 17th Street, N.W.*
  *Washington, DC 20036*
  *(202) 962-7000*
  *kshanmugam@davispolk.com*

MAY 13, 2026

54

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, a member of the Bar of this Court and counsel for appellee Intuitive Surgical, Inc., hereby certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and 32(a)(7), that the attached brief is proportionately spaced, has a typeface of 14 points or more, and contains 12,588 words.

May 13, 2026

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM