# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

RESTORE ROBOTICS REPAIRS LLC,

*Plaintiff-Appellant,*

v.

INTUITIVE SURGICAL INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Florida,
No. 3:24-cv-444-MCR-ZCB
Hon. M. Casey Rodgers

# REPLY BRIEF OF APPELLANT
# RESTORE ROBOTICS REPAIRS LLC

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
Phone: (404) 872-3800
jeff@berhold.com

Matthew D. Reade
Tiffany Pages-Sanchez
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
mreade@kellogghansen.com

*Counsel for Appellant Restore
Robotics Repairs LLC*

July 6, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 4

I.    Restore's Suit Is Timely Because Intuitive Kept Violating the Antitrust Laws During the Limitations Period ........................ 4

    A.    Intuitive Took Thousands of New Acts Within the Limitations Period—Each Inflicting New Harm.................... 6

    B.    Intuitive's Contrary Arguments Lack Merit ........................ 10

        1.    Intuitive's Own Caselaw Refutes That Entering Thousands of Exclusionary Contracts Amounts to One "Policy" Immune From Antitrust Liability.......... 10

        2.    *Klehr* Explicitly Rejected Intuitive's Knowledge Limitation on the Continuing-Violation Doctrine....... 13

        3.    Excluded Rivals May Invoke the Continuing-Violation Doctrine ..................................................... 14

        4.    Intuitive's Enforcement Acts Restart Accrual ............ 16

        5.    Restore Adequately Alleged Broadening Conduct ...... 17

II.   Restore's Suit Is Timely Because Restore's Lost Profits Were Not Reasonably Provable Before It Decrypted the X/Xi EndoWrist's Use Limiter.............................................................. 18

    A.    The Speculative Damages Doctrine Asks When Damages Became Provable, Not When Injury Occurred ..... 19

B.    Restore Could Not Have Proved Any X/Xi Damages in July 2020 ..................................................................21

C.    The S/Si Rulings Show That Restore's Damages Were Not Provable in July 2020...................................................23

III.   Restore's Request For Injunctive Relief Is Neither Moot Nor Barred by Laches ...........................................................................25

A.    Neither Laches Nor the Concurrent-Remedy Doctrine Bars Restore's Prospective Injunctive Relief.........................25

1.    Laches Does Not Preclude an Injunction Barring Future Anticompetitive Conduct ...................................26

2.    The Concurrent-Remedy Doctrine Does Not Apply ........................................................................28

B.    Restore's Request for Injunctive Relief is Not Moot.............30

IV.   The District Court Should Have Granted Leave To Amend.........31

CONCLUSION .......................................................................................34

CERTIFICATE OF COMPLIANCE.......................................................35

CERTIFICATE OF SERVICE...............................................................36

# TABLE OF AUTHORITIES

Page

**CASES**

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
603 F.2d 263 (2d Cir. 1979)..........................................................15

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
781 F.3d 1271 (11th Cir. 2015) ...............................................26, 27

*Brunswick Corp. v. Riegel Textile Corp.,*
752 F.2d 261 (7th Cir. 1984) ......................................................20

*Bryant v. Dupree,*
252 F.3d 1161 (11th Cir. 2001) ...................................................33

*California v. American Stores Co.,*
495 U.S. 271 (1990) ....................................................................28

*Center for Biological Diversity v. Hamilton,*
453 F.3d 1331 (11th Cir. 2006) ...................................................14

*Chafin v. Chafin,*
568 U.S. 165 (2013) ....................................................................30

*City of Mesquite v. Aladdin's Castle, Inc.,*
455 U.S. 283 (1982) ....................................................................31

*Coffey v. Braddy,*
834 F.3d 1184 (11th Cir. 2016) ...................................................28

*Cope v. Anderson,*
331 U.S. 461 (1947) ....................................................................29

*CSX Transp., Inc. v. Norfolk S. Ry. Co.:*
114 F.4th 280 (4th Cir. 2024).......................................9, 10, 11, 28

*da Vinci Surgical Robot Antitrust Litig., In re*,
   2025 WL 964879 (N.D. Cal. Mar. 31, 2025)...................................10

*David Orgell, Inc. v. Geary's Stores, Inc.*,
   640 F.2d 936 (9th Cir. 1981) ........................................................11

*Garcia v. Chiquita Brands Int'l, Inc.*,
   48 F.4th 1202 (11th Cir. 2022).............................................33, 34

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
   466 F.3d 961 (11th Cir. 2006) .....................................................15

*Haynes v. Hooters of Am., LLC*,
   893 F.3d 781 ..............................................................................31, 32

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ......................................................................13

*Hennegan v. Pacifico Creative Serv., Inc.*,
   787 F.2d 1299 (9th Cir. 1986) ...............................................11, 14

*Hipp v. Liberty Nat'l Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) .............................................13, 14

*Imperial Point Colonnades Condos., Inc. v. Mangurian*,
   549 F.2d 1029 (5th Cir. 1977) ................................................8, 10

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
   677 F.2d 1045 (5th Cir. 1982) .....................................................27

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) ............................................. 4, 7, 12, 13, 20

*Knox v. SEIU, Loc. 1000*,
   567 U.S. 298 (2012) ......................................................................30

*Marcucci v. Hardy*,
   65 F.3d 986 (1st Cir. 1995).........................................................28

*Midwestern Mach. Co. v. Northwest Airlines, Inc.*,
   392 F.3d 265 (8th Cir. 2004) .......................................................11

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.,*
198 F.3d 823 (11th Cir. 1999) .......................................................13

*National Parks & Conservation Ass'n, Inc. v.*
*Tennessee Valley Auth.*, 502 F.3d 1316 (11th Cir. 2007) .........29, 30

*Oliver v. SD-3C LLC,*
751 F.3d 1081 (9th Cir. 2014) .....................................................26

*Orr v. Midwest Mun. Servs., LLC,*
2026 WL 806657 (N.D. Ga. Jan. 22, 2026) ...................................34

*Pace Indus., Inc. v. Three Phoenix Co.,*
813 F.2d 234 (9th Cir. 1987) .......................................................16

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.,*
533 F.3d 1287 (11th Cir. 2008) ..............................................26, 28

*Pilkington v. United Airlines,*
112 F.3d 1532 (11th Cir. 1997) ....................................................12

*Poster Exch., Inc. v. National Screen Serv. Corp.:*
456 F.2d 662 (5th Cir. 1972) .................................................18, 20

517 F.2d 117 (5th Cir. 1975) .............1, 4, 5, 8, 11, 12, 13, 14, 15, 18

*Restore Robotics, LLC v. Intuitive Surgical, Inc.,*
2022 WL 1495005 (N.D. Fla. Apr. 11, 2022)................................32

*Russell v. Todd,*
309 U.S. 280 (1940) ....................................................................29

*Samsung Elecs. Co. v. Panasonic Corp.,*
747 F.3d 1199 (9th Cir. 2014) ......................................8, 14, 16, 23

*Sanders v. Dooly Cnty., Georgia,*
245 F.3d 1289 (11th Cir. 2001) ....................................................27

*Sanger Ins. Agency v. HUB Int'l, Ltd.,*
802 F.3d 732 (5th Cir. 2015) .......................................................22

*Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*,
711 F.3d 1264 (11th Cir. 2013) ....................................... 23

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
728 F. Supp. 3d 1034 (N.D. Cal. 2024) ........................... 32

*Travel Agent Comm'n Antitrust Litig., In re*,
583 F.3d 896 (6th Cir. 2009) ....................................... 11

*US Airways, Inc. v. Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019) ........................................ 9, 16

*Varner v. Peterson Farms*,
371 F.3d 1011 (8th Cir. 2004) ...................................... 16

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
372 F.3d 899 (7th Cir. 2004) ................................... 4, 9, 13

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
395 U.S. 100 (1969) ..................................................... 29

401 U.S. 321 (1971) ................................ 2, 4, 12, 14, 19, 20, 24, 25

## STATUTES AND RULES

15 U.S.C.:

§ 1............................................................................. 9

§ 15(a) ..................................................................... 29

§ 15b........................................................................ 29

§ 26......................................................................... 29

28 U.S.C. § 2462 ........................................................ 30

Fed. R. Civ. P. 8(c)(1)................................................. 26

## OTHER MATERIALS

AM. BAR ASS'N, PROVING ANTITRUST DAMAGES (3d ed. 2017) ..................... 5

PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW:
AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR
APPLICATION (4th & 5th eds. 2025) .......................... 5, 14, 19, 24, 28

# INTRODUCTION

Intuitive cannot dispute that it entered thousands of exclusionary contracts in the four years before this suit—contracts that, by its own admission, "increase the value" of the EndoWrist market it monopolizes. Nor can it dispute that it leveraged its contracts to stop care providers from buying Restore's less costly instruments, or that it broadened its exclusionary terms to cover new products and new sources of supply. It disputes only that any of those well-pleaded allegations matter.

Intuitive claims that because it resolved to exclude competition long ago, everything it did thereafter—every new contract drafted, negotiated, signed, and enforced to protect its monopoly—is merely a consequence of its original resolve, forever immunized by the statute of limitations. But the limitations statute is one of "repose," not one of "continued immunity." *Poster Exch., Inc. v. National Screen Serv. Corp.*, 517 F.2d 117, 127 (5th Cir. 1975). It "pull[s] the blanket of peace over acts and events which have themselves already slept for the statutory period." *Id.* It does not immunize a monopolist who keeps choosing to violate the law.

Restore's suit is timely for two independent reasons. *First*, under the continuing-violation doctrine, each of Intuitive's thousands of in-

period exclusionary contracts and other acts started its own four-year limitations clock. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338–39 (1971). *Second*, under the speculative-damages doctrine, Restore's X/Xi lost profits did not become provable until February 2024, when Restore achieved the first-ever decryption of Intuitive's use limiter—a breakthrough the S/Si court, at Intuitive's urging, deemed a prerequisite to any X/Xi damages claim. *Id.* at 339–40. Restore sued months later.

Intuitive's response seeks to collapse thousands of deliberate acts into one pre-period "policy," to treat injury as synonymous with provable damages, and to invoke doctrines—laches, mootness, and the concurrent-remedy doctrine—that either do not apply or that Intuitive never raised below. None of those arguments has merit. And even if the district court had correctly decided those issues, it should not have dismissed Restore's case without any chance to amend, given that it relied on grounds no one had briefed and had identified ways for Restore to cure any perceived deficiencies.

Accepting Intuitive's theory would cripple antitrust enforcement. A monopolist could spend years entering new contracts that expand and

extend its empire—only to avoid suit for that new harm by insisting each act is a mere consequence of its original choice to exclude competition. That is not repose. That is immunity that would smother consumer and competitor antitrust suits alike. This Court should reverse the dismissal.

# ARGUMENT

## I. Restore's Suit Is Timely Because Intuitive Kept Violating the Antitrust Laws During the Limitations Period

"[A] cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). The continuing-violation doctrine applies that straightforward accrual rule: where a defendant commits many distinct acts that each (or together) violate the antitrust laws, each act restarts the four-year limitations clock. *Id.* at 339; *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004) (Easterbrook, J.).

While a defendant may justifiably complain of having to defend a suit challenging the lingering consequences of "acts and events which have themselves already slept for the statutory period," *Poster Exch., Inc. v. National Screen Serv. Corp.*, 517 F.2d 117, 127 (5th Cir. 1975), that is not this suit. Here, Intuitive violated the law within four years of Restore's September 2024 suit by drafting, negotiating, and entering thousands of new exclusionary contracts, and enforcing its contracts, to block Restore from the market. Dkt. 21 ¶ 55 [App.67]. Restore invokes

the continuing-violation doctrine to recover damages for only those in-period harms.

Intuitive's conduct belies its claim (at 35) that "[a]llowing Restore to sue now would impair the 'basic objective—repose—that underlies limitations periods.'" Intuitive *chose* to execute exclusionary contracts, to broaden their terms, and to enforce them to shield its monopoly and exclude Restore. Indeed, Intuitive concedes (at 29) that its in-period robot sales "might increase the value" of the EndoWrist market. That concession admits Intuitive's liability: because Intuitive imposed exclusionary terms with each robot sale, each inflicted fresh antitrust injury by depriving Restore of "the opportunity to earn profits" selling EndoWrists to those care providers. 3G PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 397a (4th & 5th eds. 2025); *accord* AM. BAR ASS'N, PROVING ANTITRUST DAMAGES § II.4.B, at 91 (3d ed. 2017) (excluded rival's antitrust injury is its "profits . . . in a world free of the market restraint" minus its "actual profits").

The limitations statute does not "immunize" Intuitive's new, in-period acts, which maintained and expanded a monopoly that would have otherwise collapsed. *Poster Exch.*, 517 F.2d at 127. Because the district

court disregarded that principle, this Court should reverse the dismissal.

**A.** **Intuitive Took Thousands of New Acts Within the Limitations Period—Each Inflicting New Harm**

Intuitive concedes (at 19) that under the continuing-violation doctrine, the four-year limitations clock restarts whenever Intuitive "commits a *new act* that violates the antitrust laws" and "imposes a *new injury*." That concession alone decides this appeal—because in the four years before Restore's suit, Intuitive entered thousands of new unlawful contracts, broadened its anticompetitive conduct and terms, and actively enforced its contracts to block competition.

**1.** **Entry.** In the four years before suit, Intuitive entered thousands of new exclusionary contracts. Dkt. 21 ¶ 55 [App.67]; Dkt. 35 ¶ 55 [App.197]. And had Intuitive not entered those contracts, it could not have kept Restore out of the market for X/Xi EndoWrists, because the in-period contracts alone cover more than half the entire installed base of compatible surgical robots. Dkt. 35 ¶ 55 [App.197].

As a competitor, Restore's injury is its lost profits. Here, each new contract deprived Restore of the profits it would have earned had Intuitive not chosen, during the statutory period, to block that customer from choosing Restore. Locking Restore out of more than half the market

over the last four years thus inflicted "harm over and above" any harm from Intuitive's pre-period contracts. *Klehr*, 521 U.S. at 190.

**2. Enforcement.** Intuitive also actively enforced its existing contracts to prevent care providers from doing business with Restore. For example, Intuitive told Panama City Surgery Center in 2022 that it "could not use EndoWrists that had been reset for an additional cycle of uses by Restore." Dkt. 21 ¶ 61 [App.70]. And in 2023, after settling the S/Si Litigation,[1] Intuitive reminded customers that using a third-party repair service (like Restore's) would breach their agreements, void their service contracts, or cost them access to Intuitive's products. Dkt. 21 ¶¶ 63–64 [App.70–71]. Those examples are illustrative; Intuitive "has threatened dozens of hospitals and hospital systems around the country" and "engages in the same pattern of behavior" whenever "a hospital uses its da Vinci robot with an EndoWrist reset for an additional cycle of uses." Dkt. 21 ¶¶ 60–61 [App.69–70].

Each enforcement act restarted the clock. Courts "have repeatedly held that acts taken to enforce a contract" are "overt acts that restart[ ]

---

[1] *See Restore Robotics LLC v. Intuitive Surgical Inc.*, No. 5:19-cv-00055-MCR-MJF (N.D. Fla.).

the statute of limitations." *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203–04 (9th Cir. 2014); *accord Imperial Point Colonnades Condos., Inc. v. Mangurian*, 549 F.2d 1029, 1043–44 (5th Cir. 1977). Here, Intuitive targeted buyers and threatened consequences for dealing with Restore in the four years before suit. *See, e.g.*, Dkt. 21 ¶¶ 60–64 [App.69–72]. Intuitive "had the ability not to take" those actions; by taking them anyway, it "restart[ed] the statute of limitations." *Samsung*, 747 F.3d at 1203.

3. **Broadening.** Intuitive also broadened its unlawful conduct during the limitations period. It imposed new terms blocking Restore from collecting used EndoWrists—the key input for remanufacturing—from customers. Dkt. 21 ¶ 67 [App.72]. Intuitive also extended its exclusionary terms to the da Vinci 5, a next-generation robot launched in 2024. Dkt. 21 ¶¶ 15, 55 [App.52, App.67]. Because "X/Xi EndoWrists are compatible with—and cleared for use with—the da Vinci 5," Dkt. 21 ¶ 15 [App.52], Intuitive's decision to extend its exclusionary terms to sales of that system expanded Restore's foreclosure to a new source of demand— exactly what *Samsung* held restarts accrual. 747 F.3d at 1203–04; *see also Poster Exch.*, 517 F.2d at 128 ("some specific act or word" suffices);

*Xechem*, 372 F.3d at 902 (listing third patent to block generic competition restarted antitrust limitations period); Dkt. 42 at 18 n.10 [App.312] (for the district court's acknowledgment that "broadened" exclusionary conduct would restart the clock).

*   *   *

Unable to erase its in-period acts, Intuitive tries to recast them all as one decades-long policy of exclusion. But "[*e*]*very* contract" restraining trade is "illegal" under the Sherman Act, 15 U.S.C. § 1 (emphasis added), and Intuitive entered thousands in the four years before suit—each its own violation. Dkt. 21 ¶¶ 55, 98–103 [App.67, App.84–85]. Likewise, "improperly prolonging a monopoly is as much an offense against the Sherman Act as is wrongfully acquiring market power in the first place. Each discrete act with fresh adverse consequences starts its own period of limitations." *Xechem*, 372 F.3d at 902; *see also* Dkt. 21 ¶¶ 92–97 [App.83–84] (Restore's monopolization claims). Choosing "to enter" an anticompetitive "contract" is "an independent overt act" that restarts the clock, *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019)—the opposite of "'silence' or failure to act," *CSX Transp., Inc. v.*

*Norfolk S. Ry. Co.*, 114 F.4th 280, 288 (4th Cir. 2024). So is enforcing a contract. *Imperial Point*, 549 F.2d at 1041.

Accepting Intuitive's position would erase the continuing-violation doctrine. If executing and enforcing thousands of exclusionary contracts are not overt acts, it is hard to imagine *any* act could be. Yet courts have consistently reaffirmed the continuing-violation doctrine, even applying it to the very conduct alleged here. *See In re da Vinci Surgical Robot Antitrust Litig.*, 2025 WL 964879, at *11–12 (N.D. Cal. Mar. 31, 2025). Restore's claims are not time barred.

**B.    Intuitive's Contrary Arguments Lack Merit**

**1.    Intuitive's Own Caselaw Refutes That Entering Thousands of Exclusionary Contracts Amounts to One "Policy" Immune From Antitrust Liability**

**a.**    Intuitive claims (at 21–24) that all its in-period acts, including executing and enforcing thousands of exclusionary contracts, must be treated as one pre-period "policy" of exclusion. But none of Intuitive's antitrust cases collapses many anticompetitive acts into one pre-period "policy" for limitations purposes. Each instead holds that acts starting and ending before the statutory period do not restart accrual, while continuing acts *do*:

10

- *Midwestern Machinery Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004), rejected a suit to undo a decade-old merger; "[u]nlike a conspiracy or the maintaining of a monopoly, a merger is a discrete act, not an ongoing scheme."

- In *CSX*, the defendants set an allegedly exclusionary rate nine years before suit—and did not revisit or reiterate it during the limitations period. 114 F.4th at 282–83, 289–91 & n.9.

- In the *Travel Agent Commission Antitrust Litigation*, 583 F.3d 896, 899–902 (6th Cir. 2009), an airline did not "rejoin[ ]" a commission-rate-fixing conspiracy by not changing commission rates after its bankruptcy discharge. *Id.* at 899–902. The "final act to effectuate the conspiracy" was the last coordinated rate cut—"long before" the discharge. *Id.* at 902.

- *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938 (9th Cir. 1981), addressed a permanent refusal to deal that occurred 12 years before suit. *See Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301–02 (9th Cir. 1986) (confining *Orgell* to those facts and rejecting that "a continuing refusal to deal cannot be a continuing conspiracy"); *see also Poster Exch.*, 517 F.2d at

11

128 ("some specific act or word" of refusal during the limitations period will restart accrual).

**b.** Antitrust law unavailing, Intuitive invokes *Pilkington v. United Airlines*, 112 F.3d 1532 (11th Cir. 1997), a RICO case. But aside from *Pilkington*'s distinct facts, *see* Opening Br. 37, Intuitive cannot analogize to RICO to reframe its acts as one pre-period policy of exclusion because the RICO statute and the Clayton Act treat injury differently. While antitrust accrual starts "each time" an act "injures a plaintiff's business," *Zenith*, 401 U.S. at 338, RICO accrual requires more: a RICO claim accrues only once the plaintiff *discovers* the injury flowing from a *pattern* of racketeering activity. *See Klehr*, 521 U.S. at 188. To restart RICO accrual, *Pilkington* thus suggests that the plaintiff must identify some new kind of harm, different from what flowed from the defendant's original pattern of wrongdoing. *See* 112 F.3d at 1538. In antitrust, however, each anticompetitive act violates the law, and the limitations clock does not wait for the plaintiff to discover the injury.

The antitrust laws thus find a "continuing violation" where a new overt act leads to additional harm, even if the new act inflicts the same kind of harm as the pre-period acts—whether another refusal to deal,

*Poster Exch.*, 517 F.2d at 128–29, another exclusionary contract, *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968), another act to extend a monopoly, *Xechem*, 372 F.3d at 902, or another price-fixed sale to the same customer, *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999).

### 2. *Klehr* Explicitly Rejected Intuitive's Knowledge Limitation on the Continuing-Violation Doctrine

Intuitive claims (at 25–27) that Restore cannot invoke the continuing-violation doctrine because it "was on notice of" Intuitive's exclusionary conduct "before it filed this suit." But in *Klehr*, the Supreme Court explicitly rejected that condition: "Antitrust law provides that, in the case of a continuing violation, . . . each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again, *regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.*" 521 U.S. at 189 (emphasis added; internal quotation marks omitted).

Although citing or quoting *Klehr* about a dozen times, Intuitive never addresses that dispositive statement, which this Court faithfully followed in *Morton's Market*. *See* 198 F.3d at 827–29. Intuitive instead points to two cases under Title VII and the Endangered Species Act. *See*

13

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001) (per curiam); *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006) (per curiam). But both cases hinged on the plaintiff's failure to prove *any* continuing violation. And neither statute shares or applies antitrust law's continuing-violation framework. *See Zenith*, 401 U.S. at 338–39.

### 3. Excluded Rivals May Invoke the Continuing-Violation Doctrine

Excluded rivals may invoke the continuing-violation doctrine. *See id.* at 323; *Poster Exch.*, 517 F.2d at 123–28; *Hennegan*, 787 F.2d at 1299; *Samsung*, 747 F.3d at 1204. The question is simply whether "some specific act or word" of the defendant during the statutory period injured the plaintiff. *Poster Exch.*, 517 F.2d at 128. Here, Intuitive committed thousands of harmful in-period acts, inflicting lost profits on Restore.

Intuitive replies (at 30–31) that a rival's injury is exclusion from the market, while buyers' injury is higher prices. But here, the contracts inflict both injuries simultaneously. By blocking consumers from buying Restore's lower-cost EndoWrists, the contracts force them (and thus, ultimately, their patients) to pay higher prices while depriving Restore of its "profit on [those] lost sales." 3G AREEDA & HOVENKAMP ¶ 397.

14

There is no reason why consumers' injury should accrue with each contract, while Restore's injury (its lost sales) may not. After all, Restore's "exclusion from the relevant market" is what "denies consumers the benefit of the pressure to lower prices that would likely accompany [Restore's] becoming a viable competitor." *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 967–68 (11th Cir. 2006). And had Intuitive not executed new in-period contracts, Restore would not be excluded from virtually the entire market because it could have competed to sell EndoWrists for more than half of the entire installed base of da Vinci robots. *See* Dkt. 21 ¶ 55 [App.67]; Dkt. 35 ¶ 55 [App.197].

Intuitive's remark (at 30) that predatory pricing is treated differently shows only that different schemes harm competition differently. Predatory pricing splits the harms to consumers and the predator's rivals across two phases—below-cost pricing that destroys rivals, then recoupment by charging customers supracompetitive prices. Because of that unique two-phase structure, rivals' claims accrue when they are "permanently destroyed," *Poster Exch.*, 517 F.2d at 126, while consumers' claims accrue only after the predator raises prices, *see Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979). Here,

15

Restore is not permanently destroyed; it remains able and willing to sell. And Intuitive's contracts harm buyers and Restore simultaneously: care providers pay more because they cannot buy from Restore, while Restore loses the corresponding profits.

### 4. Intuitive's Enforcement Acts Restart Accrual

Although Intuitive contends (at 31–32) that its enforcement does not restart the limitations clock, both *US Airways* and *Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004), addressed only a defendant's passive receipt of payments under its pre-period contract with the plaintiff—not the active threats and enforcement Restore alleges. *US Airways*, 938 F.3d at 67–69; *Varner*, 371 F.3d at 1020. Courts "have repeatedly held" that enforcement restarts the clock. *Samsung*, 747 F.3d at 1204; *see also Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 239 (9th Cir. 1987) (filing lawsuit to enforce pre-period contract was overt act).

Intuitive's fallback assertion (at 32–33) that the complaint fails to allege in-period enforcement is belied by Intuitive's acknowledgment (at 33) of those allegations and by the pleaded details of Intuitive's "aggressive campaign" against willing buyers like Panama City Surgery

16

Center.  *See* Dkt. 35 ¶¶ 61–70 [App.200–205]; Dkt. 21 ¶¶ 60–61 [App.69–70].  But even so, that assertion is no answer to Intuitive's execution of new contracts binding most of the market to buy EndoWrists only from Intuitive.  *See supra* Part I.A.

**5.    Restore Adequately Alleged Broadening Conduct**

The district court thought that Restore had failed to allege that Intuitive "broadened its exclusionary practices."  Dkt. 42 at 18 n.10 [App.312].  But as shown *supra* Part I.A.2, the complaint alleges that.

Hoping to avoid those allegations' consequences, Intuitive claims (at 34) that the da Vinci 5, to which it extended its exclusionary terms in 2024, falls outside Restore's pleaded market comprising "EndoWrist instruments *for use with the da Vinci X and Xi.*"  But this "for use with" language identifies the type of EndoWrist at issue; it does not exclude the da Vinci 5 from its scope.  Indeed, X/Xi EndoWrists are compatible with the da Vinci 5, Dkt. 21 ¶ 15 [App.52], and buyers who use them are thus part of the relevant market.  The district court therefore erred, and any deficiencies could have been cured on amendment.  *See infra* Part IV.

*    *    *

Although Intuitive appeals to "repose," the limitations statute does not immunize a defendant who refuses to stop violating the law. *Poster Exch.*, 517 F.2d at 127. Because Intuitive persisted, its in-period acts are not entitled to repose. This Court should reverse the dismissal.

## II. Restore's Suit Is Timely Because Restore's Lost Profits Were Not Reasonably Provable Before It Decrypted the X/Xi EndoWrist's Use Limiter

As Intuitive concedes (at 37), the speculative-damages doctrine applies where "'the *damages* caused by an antitrust injury are so speculative that the court is unwilling to estimate them' at the time of injury." (Emphasis added.) Here, Restore's damages were speculative until February 2024, when Restore became the first servicer to decrypt Intuitive's X/Xi EndoWrist use limiter. Dkt. 21 ¶ 86 [App.80–81]. Before that breakthrough, no one knew whether the encryption could be bypassed at all—much less whether or when Restore could enter the X/Xi market. Dkt. 21 ¶¶ 83–86, 91 [App.79–83]. So under *Zenith* and *Poster Exchange, Inc. v. National Screen Serv. Corp.*, 456 F.2d 662 (5th Cir. 1972) ("*Poster Exch. I*"), the limitations clock began in February 2024.

Intuitive does not answer that point. Though it says (at 36, 40) Restore knew of its injury by July 2020, the doctrine turns on when

damages became provable, not when injury first happened. Neither

Intuitive's hypothetical-market model nor Restore's "affirmative steps"

toward entry show that Restore could have proved its damages before

achieving a decryption breakthrough no one had accomplished and no

model could assume. The S/Si litigation confirms the point: after arguing

there for years that Restore's X/Xi damages were too speculative to prove,

Intuitive now contends the opposite, but the S/Si court sided with

Intuitive. S/Si Litigation, Dkt. 218 at 3; Dkt. 21 ¶ 91 [App.82–83]. That

is decisive evidence that "a hypothetical earlier judge would have held

the plaintiff's claim to be too speculative." 3C AREEDA & HOVENKAMP

¶ 320d; *accord Zenith*, 401 U.S. at 340. The speculative-damages

doctrine applies and is an independent ground for reversal.

### A. The Speculative Damages Doctrine Asks When Damages Became Provable, Not When Injury Occurred

Injury and provable damages are separate requirements, and

Intuitive's argument ignores the second. As Intuitive concedes, the

doctrine applies where "'the damages caused by an antitrust injury are

so speculative that the court is unwilling to estimate them' *at the time of

injury*." Intuitive Br. 37 (emphasis added). *Zenith* confirms that even

after injury, future damages do not accrue while "the fact of their accrual

is speculative or their amount and nature unprovable."  401 U.S. at 339; *accord Poster Exch. I*, 456 F.2d at 667–68; *Klehr*, 521 U.S. at 190–91 (confirming *Zenith*'s "special circumstance" for speculative damages).

The doctrine applies no differently in market-exclusion cases. *Zenith* involved a plaintiff excluded from foreign markets.  401 U.S. at 323.  And *Brunswick* confirms that where future losses are "so speculative at the time of exclusion that a judge or jury would not have been allowed to award damages for those losses at that time," the plaintiff "may and indeed must wait to sue."  *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984).

The district court made the same error as Intuitive.  It declared Restore's damages calculable because Restore had suffered market-exclusion injury by July 2020. Dkt. 42 at 12 [App.306].  But on that date, every dollar of X/Xi lost profits depended on a threshold fact no one had established:  that the use limiter could be defeated.  Dkt. 21 ¶ 84 [App.80].  Those losses accrued not when exclusion began, but when Restore could first prove their existence and amount, in February 2024. *See Zenith*, 401 U.S. at 339.

### B. Restore Could Not Have Proved Any X/Xi Damages in July 2020

Intuitive's X/Xi EndoWrists are sophisticated robotic surgical instruments containing encrypted chips that enforce a hard use limit on each device. The encryption technology was state of the art—no independent servicer had ever bypassed it, and any attempt required "significant time and expense" with a "significant risk of failure." Dkt. 21 ¶¶ 83–86 [App.79–81]. Until Restore decrypted the use limiter in February 2024, "it was unknown whether anyone would be able to bypass or override" it. Dkt. 21 ¶ 84 [App.80]. That technological uncertainty is what made Restore's X/Xi damages unprovable before 2024: no jury could have awarded lost profits from a market no one had shown could be entered at all, because any such award would have required assuming a technological breakthrough that had not yet occurred. Only when Restore decrypted the use limiter in February 2024 did its X/Xi lost profits become provable. Dkt. 21 ¶ 91 [App.82–83].

Intuitive offers three reasons Restore could have proved X/Xi damages in July 2020. None withstands scrutiny.

*First*, Intuitive mistakes what Restore can prove now for what it could have proved then. Intuitive says that because Restore now alleges

a July 2020 entry date and quantified lost profits, those damages must have been calculable in July 2020. *See* Intuitive Br. 38–40. But that allegation is a but-for date resting on later proof. Only *after* Restore decrypted the use limiter in February 2024 could it determine that it would have achieved the same capability within one year of beginning the effort in a competitive market. Dkt. 21 ¶¶ 88, 91 [App.81–83]. Intuitive repeats the district court's mistake by treating Restore's ability to plead a but-for entry date today as proof that date was provable four years earlier. *See* Dkt. 42 at 12 [App.306].

*Second*, Intuitive's hypothetical-market theory assumes that removing the contracts would eliminate the only obstacle to entry. It would not. Because Restore does not allege that the encrypted use limiter is itself unlawful, the but-for world would not remove it. Dkt. 42 at 4 [App.298]; Dkt. 21 ¶¶ 49, 92–103 [App.65, App.83–85]. Removing the contracts would have given Restore a reason to invest in decryption, but a reason to try is not proof the attempt would succeed (or how soon). Dkt. 21 ¶¶ 84, 86, 88 [App.80–81]. Unlike in *Sanger Insurance Agency v. HUB International, Ltd.*, 802 F.3d 732, 740 (5th Cir. 2015), where the violation

"str[uc]k[] directly at the obstacle" to entry, here the contracts and the technological barrier are distinct.

*Third*, Restore's "affirmative steps" toward X/Xi entry did not make its lost profits provable in July 2020. Those steps show intent and preparedness, which an excluded entrant must satisfy to sue at all. *See Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264, 1273 (11th Cir. 2013). But distribution agreements, regulatory filings, and diagnostic technology showed intent to compete, not ability to enter. No independent servicer had ever defeated the limiter, and a July 2020 jury would have had to assume the very fact on which every dollar of X/Xi lost profits depended.

*Samsung* confirms the point. The uncertainty there was whether Samsung would *choose* to enter. 747 F.3d at 1204–05. The uncertainty here is sharper—whether entry was *possible* at all. If the exception reaches a plaintiff whose entry was merely uncertain, it must reach Restore, whose entry was not proven to be possible before February 2024.

C.   **The S/Si Rulings Show That Restore's Damages Were Not Provable in July 2020**

At Intuitive's urging, the S/Si court decided that Restore's X/Xi damages were still speculative in 2022, two years after the district court

23

held that Restore's claim accrued. Intuitive dismisses those rulings as evidentiary and discovery orders that did not formally find that Restore's X/Xi damages were speculative. Intuitive Br. 43–44. But the speculative-damages doctrine asks what a prior court *would have done*, not whether it issued a formal finding. 3C AREEDA & HOVENKAMP ¶ 320d; *accord Zenith*, 401 U.S. at 340.

The S/Si court answered that question. Intuitive persuaded it that Restore's X/Xi lost profits would be a "speculative idea" until Restore "figured out a way" to defeat the use limiter. S/Si Litigation, Dkt. 185 at 34:13-25; S/Si Litigation, Dkt. 218 at 3. And the S/Si court refused to compel discovery about the use limiter, crediting Intuitive's argument that Restore could not assert harm to its "contemplated (but currently non-existent)" X/Xi business without the ability to "circumvent the X/Xi use counter." S/Si Litigation, Dkt. 192 at 2–3; *see also* Dkt. 35 ¶¶ 91–92 [App.213–214].

Intuitive cannot have it both ways. It told the S/Si court that Restore had no provable X/Xi business; it now says the opposite. That Restore was confident in its eventual success by 2022, as Intuitive notes, is not proof that its damages were provable in 2020. And any factual

dispute about when Restore's claims became non-speculative could not be decided as a matter of law at this stage.

The speculative-damages doctrine exists to prevent exactly the trap Intuitive asks this Court to bless. Sue too early, and the damages are too speculative to recover; wait, and "damages that could not be proved within four years of the conduct from which they flowed" are "forever" lost. *Zenith*, 401 U.S. at 340. Restore's X/Xi lost profits became reasonably provable on February 29, 2024, when Restore became "the first and only" independent servicer able to reset the X/Xi use limiter. Dkt. 21 ¶ 86 [App.80–81]. Restore sued less than seven months later. Its claims are timely, and this Court should reverse on this independent ground.

## III. Restore's Request For Injunctive Relief Is Neither Moot Nor Barred by Laches

### A. Neither Laches Nor the Concurrent-Remedy Doctrine Bars Restore's Prospective Injunctive Relief

Intuitive asks this Court to hold that once the four-year damages period runs, a monopolist may keep excluding competition free from any injunction—even though the conduct continues and the threatened harm lies ahead. But neither laches nor the concurrent-remedy doctrine, which

Intuitive never raised below, immunizes future exclusionary conduct.

### 1. Laches Does Not Preclude an Injunction Barring Future Anticompetitive Conduct

Besides seeking damages, Restore also seeks an injunction stopping Intuitive from violating the law in the future. Laches does not bar that relief for four independent reasons.

*First*, Restore's damages case is not time-barred, *see supra* Parts I–II, which creates a "strong presumption" against laches. *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1320 (11th Cir. 2008); *see also Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086–87 (9th Cir. 2014) (cited by Intuitive Br. 49) (not applying laches because plaintiffs alleged injury within the limitations period for damages).

*Second*, Intuitive did not prove, and the district court did not find, laches's required elements. Laches is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), which Intuitive bears the burden to prove. But Intuitive never raised laches at all. The district court injected it *sua sponte* in a footnote ruling made without briefing and without the required finding of undue prejudice. Dkt. 42 at 18–19 n.11 [App.312–313]; *see also Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015) (for the elements of laches).

That alone requires reversal. In *Sanders v. Dooly County, Georgia*, 245 F.3d 1289, 1291–92 (11th Cir. 2001) (per curiam)—a case Intuitive invokes (at 50)—this Court reversed a laches dismissal where the district court *had* identified grounds for prejudice because none of them applied to the specific relief sought. Dismissing Restore's complaint without *any* prejudice finding at all cannot fare better. Nor can Intuitive salvage the district court's *sua sponte* dismissal here by invoking an out-of-circuit "rebuttable presumption" that Restore never had a chance to rebut. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

*Third*, had Intuitive tried to show laches, it could not have met its burden. Restore did not inexcusably delay, and Intuitive did not suffer undue prejudice. *Black Warrior*, 781 F.3d at 1283. When Restore tried to raise its X/Xi claims years ago in the S/Si case, Intuitive persuaded the court that the claims would be too "speculative" until Restore could decrypt the use limiter. S/Si Litigation, Dkt. 185 at 34:13-25; S/Si Litigation, Dkt. 218 at 3. Adhering to that ruling, Restore decrypted the use limiter and sued months later. Dkt. 21 ¶ 86 [App.81]; Dkt. 1 [App.8]. Having "'contributed' to the delay" it complains of now, Intuitive cannot

satisfy either laches prong as a matter of law. *Marcucci v. Hardy*, 65 F.3d 986, 989 n.4 (1st Cir. 1995); *see also Coffey v. Braddy*, 834 F.3d 1184, 1190 (11th Cir. 2016) (endorsing that principle of equity). Besides, the delay did not harm Intuitive; the longer Intuitive avoids an injunction, the longer it can monopolize the X/Xi EndoWrist market.

*Fourth*, laches does not bar the "prospective relief" Restore seeks. *Peter Letterese*, 533 F.3d at 1321. Antitrust law distinguishes forward-looking relief from relief that would unwind a settled matter, like a merger. *See* 3C AREEDA & HOVENKAMP ¶ 320g. Intuitive's own cited cases draw the same line. *See, e.g.*, *California v. American Stores Co.*, 495 U.S. 271, 295–96 (1990) (explaining that laches "may protect" mergers from "belated attacks").

Restore's requested injunction would unwind nothing; it would bar Intuitive from imposing or enforcing exclusionary terms in the future. *See* Dkt. 21 ¶¶ 57–61 [App.67–70]. Intuitive cites no case applying laches to bar such relief.

### 2. The Concurrent-Remedy Doctrine Does Not Apply

Its laches argument unavailing, Intuitive resorts to the concurrent-remedy doctrine, which bars a plaintiff from evading a legal statute of

limitations by relabeling a time-barred legal claim as equitable. *See Cope v. Anderson*, 331 U.S. 461, 464 (1947); *Russell v. Todd*, 309 U.S. 280, 289–91 (1940).

But Restore's legal claim is not time-barred. *See supra* Parts I–II. Nor is Restore relabeling a legal claim as equitable. Congress itself *created* a distinct equitable remedy to prevent future antitrust violations, to which it chose not to apply *any* limitations period. *Compare* 15 U.S.C. § 26, *with id.* §§ 15(a), 15b. Restore does not seek the same remedy via both legal and equitable pathways. It seeks its inflicted damages, under 15 U.S.C. § 15(a), and an injunction against "threatened loss or damage," *id.* § 26, which is available even where damages are not. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130–31 (1969).

The concurrent-remedy doctrine applies only where Congress has left equity's timeliness unaddressed. Here, Congress was not silent. Congress applied a four-year limitations period to damages actions under Sections 4, 4A, and 4C of the Clayton Act—deliberately omitting Section 16's injunctive remedy. 15 U.S.C. § 15b. That statutory command distinguishes this case from *National Parks & Conservation Association, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316 (11th Cir.

2007). There, the only limitations statute in sight—the catch-all in 28 U.S.C. § 2462—said nothing of equitable relief. 502 F.3d at 1326–27. Here, the antitrust laws leave no gap for the concurrent-remedy doctrine to fill; indeed, Intuitive cites no antitrust case applying the doctrine to bar prospective injunctive relief. Congress's choice should be honored.

**B.     Restore's Request for Injunctive Relief is Not Moot**

A case is moot only when it is "impossible for a court to grant any effectual relief whatever." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 307–08 (2012)). Any remaining interest in the dispute, "however small," defeats mootness. *Id.*

So here—because Intuitive's purported "approval" letter offers incomplete relief. It is extracontractual, excludes repair services, leaves every contract term standing, issued only after suit, and comes with no assurance that it will not be revoked. Dkt. 35 ¶¶ 71–73 [App.205–206]; Dkt. 36-1 at 13 [App.277]. Intuitive has "never" relayed its purported approval to buyers in the way its contracts require, and buyers remain unconvinced that Intuitive will not punish them for buying from Restore. *See* Dkt. 21 ¶ 90 [App.82]; Dkt. 35 ¶¶ 69–74 [App.204–205].

Intuitive's assertion (at 47) that Restore's FDA clearance creates

mootness is wrong because, even with clearance, Restore's ability to compete hangs on Intuitive's discretion absent an injunction. Permission that Intuitive grants, Intuitive can revoke. A market open to Restore only when Intuitive says so is not a competitive market at all.

The voluntary-cessation principle stops a defendant from securing dismissal with promises it remains free to break. Restore asked Intuitive to make its approval binding; Intuitive refused. Dkt. 35 ¶¶ 70–73 [App.204–206]. A promise the defendant refuses to make enforceable cannot cause mootness, lest the defendant remain "free to return to his old ways." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982). Nor can Intuitive escape voluntary cessation by backdating its permission. *See Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 784–85 (11th Cir. 2018). Because an injunction could provide effectual relief, this case is not moot.

## IV.   The District Court Should Have Granted Leave To Amend

Restore's proposed complaint cured the deficiency the district court perceived by showing that Intuitive changed its supposedly "final, permanent policy" during the limitations period. Dkt. 35 ¶¶ 63–65, 70–

73 [App.201–206]; *see also* Opening Br. 55–56.  So amendment was not futile.

Intuitive does not confront Restore's broader argument that the "district court should not have denied Restore the chance to address its concerns" even if it deemed the proposed complaint insufficient.  Opening Br. 57.  Restore's suit alleges grave harms to competition, which multiple courts have deemed serious enough to deserve a jury's judgment.  *See, e.g.*, *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 728 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2024); *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, 2022 WL 1495005, at *3–5 (N.D. Fla. Apr. 11, 2022).  After Intuitive moved to dismiss, trial counsel duly proposed an amendment to address the matters the motion raised—only for the district court to dismiss the case without affording an opportunity to address the matters the court raised in its order, including those that no party had presented.  Dkt. 42 at 18–19 n.11 [App.312–313].[2]

---

[2] Contrary to Intuitive's claim (at 52), Restore had no chance to address the district court's assertion that Restore is "no longer excluded" from the market in its briefing because the district court identified that mootness ground *sua sponte* in its dismissal order.  Dkt. 42 at 18–19 n.11 [App.312–313].

"Rather than indicating infirmities in the complaint," *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) (per curiam), the district court's dismissal order identified ways that Restore could overcome the limitations bar, such as by alleging "broadened" exclusionary practices. Opening Br. 57 (quoting Dkt. 42 at 18 n.10 [App.312]). Intuitive now claims (at 33–35) Restore's broadening allegations before the district court were insufficient, despite not challenging their sufficiency below. But if more details were needed to plead that Intuitive added new terms limiting EndoWrist collections or that Restore keeps losing sales because of Intuitive's contracts, then the district court should have given Restore a chance to bolster those allegations rather than dismissing the case. *See Bryant*, 252 F.3d at 1163–64.

It is not "beyond doubt" Restore could plead a plausible complaint, even on the district court's view of the law. *Id.* at 1164; *see also Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1221 (11th Cir. 2022); *Orr v. Midwest Mun. Servs., LLC*, 2026 WL 806657, at *2 (N.D. Ga. Jan. 22, 2026) (consulting that test). At minimum, the district court should have given Restore a chance to amend.

## CONCLUSION

This Court should reverse the dismissal order.

Dated: July 6, 2026

/s/ *Matthew D. Reade*

Jeffrey L. Berhold
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
Phone: (404) 872-3800
jeff@berhold.com

Matthew D. Reade
Tiffany Pages-Sanchez
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
mreade@kellogghansen.com

*Counsel for Appellant Restore Robotics Repairs LLC*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7) because, according to the word-processing system used to prepare it (Microsoft Word 365), it contains 6,462 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word 365 in a proportionally spaced typeface (Century Schoolbook, 14 point).


Dated:  July 6, 2026               /s/ *Matthew D. Reade*
                                   Matthew D. Reade

# CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Matthew D. Reade*
Matthew D. Reade